(50 South. 816.)

No. 17,947.

BLAISE v. SECURITY BREWING CO.

In re TINKER et al.

(Nov. 15, 1909.   Rehearing Denied Dec. 13, 1909.)

1. APPEAL AND ERROR (§ 489*)—STAY OF PROCEEDINGS—POSSESSION OF RECEIVER.

The appointment of a receiver for a business corporation, as a going concern, vests in the receiver, as the court's officer, title to the property of the corporation and right of possession; and such right of possession is not affected by an appeal taken under section 4, Act No. 159, p. 314, of 1898, which provides that "such an appeal * * * shall have the effect of suspending the functions of such receiver, except to perform such administrative acts as may be necessary for the preservation of the property"; the possession being necessary for the performance of the acts of administration required for the preservation of the property.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2279; Dec. Dig. § 489.*]

2. RECEIVERS (§ 74*) — INTERFERENCE WITH POSSESSION—CONTEMPT.

Interference with the possession of a receiver, or obstruction of his attempt to exercise the right of possession, is punishable by proceedings for contempt.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 132; Dec. Dig. § 74.*]

3. RECEIVERS (§ 74*) — INTERFERENCE WITH POSSESSION—CONTEMPT.

It is not necessary that a person, interfering with or obstructing a receiver in the possession of the property or in the exercise of his right to the possession of property included in the receivership, should have been officially notified of the appointment of the receiver or of the orders under which he is acting, in order to render him liable for contempt. Actual knowledge of such appointment or orders is sufficient.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 74.*]

4. RECEIVERS (§ 74*) — INTERFERENCE WITH POSSESSION—CONTEMPT.

Unauthorized interference with the possession of a receiver cannot be justified on the ground that the person interfering considered the appointment of the receiver ill-advised or illegal.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 74.*]

5. CERTIORARI (§ 29*)—PROHIBITION (§ 11*)—REVIEW—FINDINGS OF FACT.

The jurisdiction of the district court to make and to enforce, for certain purposes, orders appointing a receiver for a business corporation, and directing him to make an inventory of the property of the corporation, being established, and actual knowledge of the making of the orders being brought home to the persons charged with obstructing their execution, the question whether the district court found correctly or incorrectly, in holding that such parties were guilty of the particular conduct charged, will not be reviewed in this court on application for the writs of certiorari and prohibition.

[Ed. Note.—For other cases, see Certiorari, Dec. Dig. § 29;* Prohibition, Dec. Dig. § 11.*]

(Syllabus by the Court.)

Action between George P. Blaise and the Security Brewing Company. Z. W. Tinker and another apply for writs of certiorari and prohibition to the Judge of the Civil District Court. Dismissed.

G. W. Flynn and M. D. Dimitry (T. M. & J. D. Miller, of counsel for relator Tinker), for relators. Clegg, Quintero & Gidiere, for respondent receiver of Security Brewing Co.

Statement of the Case.

MONROE, J. Relators complain that they have been adjudged guilty of contempt by the judge of the civil district court, division E, and that, for the reasons stated in their petition, the finding was unauthorized, and they pray that the execution of the judgment be prohibited.

The facts are as follows: Relator Blaise, who is secretary of the brewing company, filed a petition in the district court, alleging that he was a creditor of the company, and that, whilst the company was solvent, it was unable to meet its obligations as they matured and was harassed by the demands of its creditors; that its board of directors had passed a resolution admitting those facts, and declaring that a receiver should be appointed to operate it as a going concern. Wherefore he prayed that a receiver be appointed to operate the company as a going concern. The company accepted service of

the petition, and answered at once, admitting the truth of the allegations therein contained, and it concurred in the prayer for the appointment of the receiver, and asked:

"That the recommendation of the appointment of George P. Blaise, as receiver, be carried out."

The court took the matter under advisement, and appointed John McGraw receiver. It also, on the application of McGraw (who qualified according to law), authorized him to employ counsel, to employ a competent man to stay in the office of the company and keep in touch with its transactions, and to cause an inventory to be made of the property of the company. The company applied for, and obtained, an order for a suspensive appeal from the judgment appointing the receiver, in so far as it named McGraw to that position, which appeal was granted upon the day following that upon which the order of appointment had been made. A few days later the receiver ruled the relators, Tinker, as president of the company, and Blaise, as secretary, to show cause why they should not be ordered to deliver to him the property and assets of the company, and why they should not be punished for contempt, for having refused to do so, and for having refused to allow him to make an inventory of such property and assets, and inform himself, by an inspection of the books, of the outstanding liabilities and daily expenditures. After hearing, the rule was made absolute, and defendants in rule were adjudged guilty of contempt; but sentence was deferred. And thereupon said defendants, as relators herein, made the application which we are now considering. Their position is that the receiver's functions were suspended, quoad the right to take possession of the property of the company, and the jurisdiction of the court ousted, by the appeal, and that, in effect, the receiver had no right, under the circumstances, to make the inventory or to inform himself as to the debts due by, or to,

the company, and that, no specific orders having been directed to them in regard to those matters, they were not in contempt for not complying with such orders. The judge a quo, for cause why the prohibition should not issue as prayed for, says: That relators, as president and secretary, respectively, of the brewing company refused to allow the receiver to make an inventory of the open accounts of the company, or to permit him to ascertain, by reference to the books, the outstanding liabilities, or to take charge of the property and assets of the company, "all as alleged in the rule for contempt, and as proved at the trial"; that, under the law, a receiver, pending an appeal from the judgment appointing him, is empowered "to perform such administrative acts as may be necessary for the preservation of the property"; that the first step necessary for that purpose is to ascertain, by means of an inventory, of what the property consists, and the next step is to assume control of it; that the power to perform administrative acts is the power to administer, and that there can be no administration of property without possession and control of it; that it was necessary in this case that the receiver should be in possession of the property in order to protect it from the pursuit of creditors and prevent waste and destruction by those charged with its mismanagement; that the lawmaker intended to vest the same authority in a receiver as is vested in a provisional syndic, and that he has the same right of administration; that the appeal leaves him untrammeled, save that he cannot liquidate; that the brewing company has appealed only in so far as the judgment complained of names McGraw as receiver, instead of Blaise, who was recommended by himself and the board of directors, to whose unhappy administration the embarrassment of the company is due, the necessity for a receivership being admitted, but it being contended that the

court is without discretion in the matter of the selection of the receiver, and must appoint the person recommended, as stated; that, if the receiver who has been appointed cannot assume possession and administer the property, notwithstanding the appeal, it must remain under the control of persons confessedly incapable of conserving it for the benefit of those interested.

## Opinion.

Act No. 159, p. 312, of 1898 (section 1), authorizes the district courts—

"to appoint receivers to take charge of the property and business of corporations: * * * (8) At the instance of a creditor, when the board of directors of the corporation have declared, by resolution, that the corporation is unable to meet its obligations as they mature and that a receiver is necessary to preserve and administer its assets for the benefit of all concerned."

It is not disputed that the proceedings in this case, leading up to, and inclusive of, the appointment of the receiver, were in strict conformity to the law thus quoted, and it cannot well be disputed that they are to be regarded as having been taken as well in the interest of the creditors of the corporation as the stockholders. There can, therefore, be no question that the court was authorized to appoint a receiver and to vest him with such authority as he required in order to enable him to accomplish the purpose in view in making the appointment; and it is equally beyond question that the court did make such appointment. Section 5 of the statute quoted provides that:

"In the order appointing said receiver, the court may, in its discretion, confer on the receiver such powers of administration as it may deem best for the interest of all parties, and, from time to time, restrict or enlarge such powers," etc.

The letters of appointment issued to McGraw confer on him—

"full power to hold, administer, manage, and dispose of the property and income of said corporation, and conduct the business of said corporation, as a going concern, as directed by the court."

Section 4 of the act provides that any person having an interest (to be shown by affidavit)—

"may appeal from any order appointing * * * a receiver. * * * Such appeal, when perfected, shall have the effect of suspending the functions of such receiver, except to perform such administrative acts as may be necessary for the preservation of the property; provided, such appeal must be taken and perfected within ten days," etc.

The section further provides that an appeal may be taken after the expiration of 10 days (from the entry of the order), and within 30 days, but that in such case "it shall not suspend the functions of said receiver in any way." It is not disputed that in this case the company took the appeal within 10 days and that it had the effect of a suspensive appeal. The fact remains, however, that it did not deprive the receiver of the authority "to perform such administrative acts as may be necessary for the preservation of the property"; i. e., the property, the right to the possession of which was vested in him by virtue of his appointment, and which consists of all the property, real and personal, of the brewing company, including the "going business" and the good will thereof.

The acts of administration necessary for the preservation of property vary, more or less, with the character of the property. Thus, for the preservation of a going sugar plantation, it may be necessary to grind the cane, or even to plant and grind it; and for the preservation of property consisting of a going hotel it would seem to be necessary to keep it open to guests. But, whatever may be the character of the property, it is difficult to conceive of a case in which one could reasonably be charged with the performance of the acts necessary for its preservation, and at the same time be denied either information as to its character and whereabouts or possession and control of it. It would, perhaps, be the duty of the receiver in this case to keep certain of the property of the

brewing company covered by insurance; but, in order to act as a prudent administrator, he should know, before incurring obligation in that respect, what policies have already been taken out and what premiums paid, and unless it be held that the outstanding accounts, due to the company, are not to be considered property, he should, in order to preserve such assets, be informed who the debtors are and when their obligations mature. The petition and answer upon which the receiver was appointed, and the appointment itself, contemplate a receivership for the going business (which includes the good will) of a brewery; but how is property of that character to be preserved by one who is accorded no control over, and no information in regard to, it?

There is no doubt that a difference exists between acts which are necessary for the preservation of property and those which involve transactions concerning the property; but are not necessary for that purpose, though in some cases the difference may not be very obvious. For that reason, much is left to the discretion of the court which has charge of the receivership, and in which the custody of the property is vested. The respondent judge was of opinion that, for the preservation of the property here involved, the receiver should assume control and possession of it, and should make an inventory, and should inform himself of the condition of the business; and we find the reasons given by him in support of his opinion amply sufficient.

The remaining question is whether relators were properly adjudged guilty of contempt. Their defense, that the receiver was not entitled to the possession of the property, and, in effect, was not entitled, as administrative acts necessary to its preservation, to make an inventory and to inform himself of the condition of the "going business" of which he had been placed in charge, has been answered. They further say that

no specific orders with reference to the delivery of the property to the receiver, or with regard to his administration of it, for the purposes of its preservation, were directed to them, and that they cannot be held guilty of contempt for failure to respect orders that were not made, and, still further, that, even had such orders been directed to them, the proceeding for contempt is not the proper remedy for their enforcement.

The effect of the order appointing the receiver was, however, in legal contemplation, to wrest the possession of the property from the brewing company, and to vest the title and right of possession in the court, through the receiver; and the relators, Blaise and the president of the brewing company, were as much bound by that order as though it had been addressed to them, for the reason that the order was made at the instance of Blaise and the brewing company, and both of them, as also the president of the company, had knowledge and notice of it at the time that the acts charged were committed. Those acts, the court a quo found, amounted to an interference with the receiver in the attempted exercise of his right of possession and to an obstruction to the execution by him of the specific orders, authorizing and directing him to hold and manage the property and to make an inventory of it; and the fact that the company may have doubted the advisability or legality of the order appointing the receiver, in so far as it named McGraw, instead of Blaise, and took its appeal therefrom, afforded no justification for a disregard of the appointment in so far as its effect was not suspended by the appeal. Mr. High, in his work on Receivers (3d Ed., § 5), referring to the difference between a writ of injunction and an order for the appointment, or appointing, a receiver, says:

"Perhaps the principal element of difference between those two important remedies lies in this: That an injunction is strictly a conserva-

tive remedy, merely restraining action and preserving matters in statu quo, without affecting the possession of the property or fund in controversy; while the appointment of a receiver is usually a more active remedy, since it changes the possession as well as the subsequent control and management of the property. A court of equity, by an injunction, ties up the hands of defendants, and preserves unchanged, not only the property itself, but the relations of all the parties thereto. But, in appointing a receiver, the court goes still further, since it wrests the possession from defendant and assumes and maintains the entire management and control of the property or fund, frequently changing its form, and retaining possession, through its officer, the receiver, until the rights of all parties in interest are satisfactorily determined."

And, further, upon that point, and upon the other questions which are here involved, we quote from the same authority as follows:

"Sec. 135. As regards the precise time when the receiver's title and right of possession arise to attach property which is the subject of the receivership, the better rule would seem to be, as held in New York, that they vest, by relation, back to the date of the original order appointing him, although the proceedings may not be perfected until a later date, and that the receiver's title and right of possession, during the interval between such order and the time of perfecting his appointment, are superior to those of attaching creditors, or of judgment creditors who levy upon the property during such interval. Thus, when an order of reference is made to a master in chancery for the appointment of a receiver, and the appointment is afterwards made under and pursuant to such order, the receiver's title will be held to have vested as of the date of the original order, and to have attached upon all property to which the receivership could extend, in like manner and with the same effect as if the original order had named the receiver, instead of directing the reference for that purpose. In all such cases actual possession by the court appointing the receiver is not necessary to complete its jurisdiction or control over the property as against other creditors. It is sufficient that the court has assumed jurisdiction over the property in controversy by appointing a receiver, and it is therefore as much in the possession of the court as if already in the hands of its receiver, even though he has not yet complied with the order requiring the execution of a bond."

"Sec. 163. The receiver being an officer of the court, and his possession being regarded as the possession of the court, any unauthorized interference therewith * * * is regarded as a contempt of court and is punished accordingly; the usual punishment to which resort is had being by attachment for contempt. * * * It is also a well-established principle that, to render a defendant or other person liable by attachment for contempt in disturbing or interfering with property of which a receiver is entitled to possession, it is not necessary that he should be officially apprised of the receiver's appointment, or even that the formal orders should have actually been drawn, provided he has due actual notice of the receivership, or of the order of the court directing the appointment. Any actual knowledge of the granting of the order is sufficient to fix defendant's responsibility for its violation; the same principle being applicable in such cases as in case of the violation of an injunction."

"Sec. 166. And where a defendant is present in court during the hearing of a cause, and knows that an order granting a receiver of his estates has been allowed, although the decree itself has not yet been drawn, he is guilty of contempt of court if he removes a portion of the property and puts it beyond the receiver's possession for the purpose of evading the decree, and he cannot justify on the ground that the decree has not yet been entered."

"Sec. 143. Courts of equity will not permit any unauthorized interference with the possession of their receiver to be justified on the ground that the appointment was ill-advised or illegal, and that the parties interfering were, therefore, not bound to regard it."

The jurisdiction of the court a quo to make and to enforce, for the purposes of the questions here at issue, the orders appointing the receiver and for the taking of the inventory, being established, and actual knowledge of the making of the orders having been brought home to the relators, the question whether the court found correctly or incorrectly in holding that relators were guilty of the particular conduct charged against them, and, if so, whether it constituted a violation of those orders, and hence a contempt of the court, is one which, it has repeatedly been held, is not reviewable in this court on application for writs of certiorari and prohibition. State ex rel. Barthet v. Judge, 40 La. Ann. 434, 4 South. 131; State ex rel. Kiernan v. Judge, 41 La. Ann. 314, 6 South. 539; Alverson v. Judge, 105 La. 280, 29 South. 705.

We therefore conclude that relators can take nothing by this application. The original order herein made is accordingly rescinded, and this proceeding dismissed, at the cost of the relators.