MONROE, C. J.
This case is the sequel of another, having the same title and the number 20S06 of the docket of this court (66 South. 788[1]), which is this day decided, and the two cases are so intimately connected that the statement of the questions to be here decided must necessarily include a résumé of the facts found and the conclusions reached in the case mentioned.
A. N. Sample (whom we shall call plaintiff) caused executory process to issue from the Eleventh judicial district court, sitting for the parish of Red River, upon mortgage and vendor’s lien notes to the amount of $125,500, and the mortgaged property was seized and advertised to be sold; but, upon the day preceding that upon which the sale was to have been made, the maker of the notes (relator herein, whom we shall call defendant) enjoined the sale, on the ground, among others, that it was entitled to a credit of $1,585.40. Plaintiff filed an answer to the petition for injunction, in which it conceded the credit, and converted the proceeding into an ordinary action. Defendant filed a rule to show cause why it should not have judgment on the face of the answer, and the whole matter was then, on July 6, 1914, in open court, and, in presence of the counsel for both litigants, ordered fixed for trial on July 30th, which was Thursday of the fourth week in July, a week within the ten months’ continuous session of the court required by the Constitution, and which had been fixed by the rules of the court for the holding of a civil term at Coushatta, in the parish of Red River; and on the same day (July 6th) counsel for plaintiff, in answer to a question upon the subject propounded by the leading counsel for defendant, informed that gentleman, distinctly and categorically, that he in-, tended to return to Coushatta (from his home in Shreveport) on July 30th, and try the case. During the third week in July, Mr. Stephens, a member of the bar, made some inquiry of the judge of the district court concerning the possibility of his adjourning over the term fixed for the following week, and he exhibited to the judge a letter from one of defendant’s counsel, who resided in Shreveport, to the effect that he understood that members of the Coushatta bar, and others having *215 business before tbe court, desired such adjournment, tbe name of Judge Hall, plaintiff’s counsel, being mentioned, and tbe statement of tbe writer of tbe letter being, in effect, that he understood that Judge Hall was willing that the court should so adjourn. On Monday, July 27th, being the first day of the term in question, Mr. T. W. Nettles, defendant’s leading counsel, moved that the court adjourn over and pretermit the term, stating in support of his motion that all the lawyers and litigants so desired, and others, members of the Oousbatta bar, joining in the request, the judge ordered the adjournment “until court in course” (which meant until the first Monday in October), stating, in effect, that he did so because he understood that all the lawyers desired it, but that, if there was one who objected and insisted upon the trial of his case, his right in that respect would be recognized. On the following day, being at the depot in Shreveport, and about to take the train for his home at Natchitoches, the judge was informed by Judge Hall, plaintiff’s attorney, that he had not been consulted about the proposed adjournment; that he had never intimated to any one that he was willing that his ease, regularly fixed for July 30th, should thus be continued for more than two months; that the interest of his client demanded that it should be tried on the day fixed; and that the continuance was .injurious and operated as a denial of a plain legal right. Upon hearing the statement of the counsel, the judge considered that he had been led into error by the representations of defendant’s counsel; that the action thereby superinduced operated an injustice to a litigant and his counsel; and that it was his duty to set the matter right, so far as he could. 1-Ie therefore, upon the evening of the same day (July 28th) telephoned, first, to Mr. W. A. Wilkinson (one of the counsel representing defendant), and, explaining the situation (i. e., that he had ordered the adjournment through a misapprehension, super-induced by the representations to which we have referred), notified him that the case in question would be tried on July 30th, as originally fixed; to which Mr. Wilkinson replied that he was only associate counsel, and requested the judge to communicate with Mr. Nettles (who resides at Oousbatta), whicn the judge did, explaining the situation to him, as he had done to Mr. Wilkinson, and giving him the same notice. Mr. Nettles replied that he thought the members of the Cousbatta bar should be allowed to determine-whether the court should hold its term; that, in saying that all the lawyers desired the adjournment, he had meant all the members of the Oousbatta bar; but that he would be present in court on July 30th. In the meanwhile — that is to say, on July 29th — without notice to the judge, Mr. Wilkinson presented to a member of this court who happened to be in Shreveport a petition on behalf of defendant, upon which he obtained an order prohibiting the contemplated trial on July 30th and directing the judge to show cause why the prohibition should not be perpetuated; and he caused a copy of the petition and order to be made, certified by a notary, and forwarded to Mr. Nettles, at. Cousbatta, whilst the original petition and order were mailed to the clerk of this court, at New Orleans, with instructions to issue a formal writ and to notify the judge and the plaintiff herein against whom it was to-be directed. Mr. Wilkinson also, upon the same day, informed the judge (through the-telephone) of the action so taken, and advised him that his statement upon the subject would be confirmed by the clerk of this court, upon receipt by him on the morning of July 30th of the papers that had been sent to-him. When 'that morning arrived, Mr. Nettles handed the judge the copy of the petition, with the order indorsed thereon, which had been sent to him, as stated, and the- *217 judge read the order; after which Mr. Nettles asked for a delay of 30 minutes within which to “make a showing for a continuance” of the case in question (since the judge had apparently announced that it was to be tiled unless some such sufficient showing were made), and 60 minutes were granted, at the expiration of which delay Mr. Nettles announced that he would not appear in the case; whereupon, no question of jurisdiction haying been presented for decision, the court ordered the trial to proceed, and no exception was taken to that order. About that time there was a .call at the telephone in the court building, which was answered by the sheriff, who reported the following message to the judge, to wit:
“Tell Judge Cunningham that this is a matter of the'Supreme Court, and that he must answer the telephone.”
And a similar message was delivered a little while later. The judge replied, on both occasions, that he was busy trying a case, and would attend the telephone when he had finished, or words to that effect, and he proceeded with the trial, gave judgment for plaintiff, and signed the judgment; after which he received a message by wire from the clerk of this court, and on the following day (July 31st) received (through the mail, as we understand) the writ which had been issued by the clerk on July 30th. In the petition which was presented to our Associate it was alleged that, upon the adjournment on July 27th, the district court entered upon its vacation, and that the judge had so declared, and that, as a matter of fact, the court was in vacation on July 29th, when the petition was presented, and would be in vacation on. July 30th, the day upon which the ease in question was set down for trial. The petition was, however, silent in regard to the circumstances under which the adjournment had been ordered; contained no intimation that the judge had acted under a misapprehension, or that the error into which he had fallen had been superinduced by the representations of defendant’s counsel, and which were themselves wholly unauthorized and erroneous.
The conclusions reached by this court in the case No. 20806 are stated in- the opinion as follows:
“That the case of Sample v. Colonial, etc., Co., together with the injunction proceeding, having been fixed for trial on July 30, 1914, during a civil term of the district court, regularly established by order of court within the continuous session of ten months required by the Constitution, the plaintiff [defendant in injunction] was within his legal rights in demanding a trial upon that day, unless some sufficient reason for a continuance were shown; that the order for the adjournment of the court on July 27th, until October 5th, and the consequent continuance of the case, were super-induced by the representations of defendant’s counsel, which led the judge to believe that plaintiff’s counsel were willing that the court should so adjourn and the case be so continued; that those representations, in so far as they purported or appeared to express the view of plaintiff’s counsel, were wholly unauthorized and erroneous; that the action of the respondent judge in reassigning the case for trial the day upon which it had previously been assigned, and which day was not, and never became, part of the vacation period, was a matter within his jurisdiction, concerning which his ruling is not properly subject to review upon an application for prohibition; that the petition for the writ of prohibition contained serious errors, in its reticence and its allegations alike, but for which the order of prohibition would not have been made; that a writ of prohibition will not be sustained where the act sought to be prohibited has already been accomplished.”
In the case now under consideration the relator has caused a writ of_ certiorari to issue under which all the proceedings to which we have referred have been brought up for review, and has also ruled the judge of the district court to show cause why he should not be punished for contempt, and its counsel argue that the judge, having received notice, though informal, of the fact and character of the order that had been made, was bound thereby; that the subsequent proceedings were void, and should be so declared; and that the judge should be punished for contempt.
*219 ■ Counsel for plaintiff cite the Code of Practice, arts. 850, 851, 852, 872, and section 1 of rule 12 of this court (47 South, vii), in support of the proposition that the judge of an inferior court'is not bound to take notice of a writ of prohibition until it has issued from the clerk’s office of the superior court, in a proceeding there filed, and has been served on him by the sheriff.
We have decided in the ease No. 20806 that the writ of prohibition obtained by relator should not have issued; that its effect, if regularly served and obeyed, would have been to prevent a judge, acting within the jurisdiction vested in him by law, from doing justice to a litigant before his court, and to deny to such litigant the plain legal right to have tried and decided an ordinary case in which he sued for the recovery of a large sum of money alleged to be due him; and that the writ would not have been issued but for the serious and misleading errors of the petition upon which the order therefor was made. If, now, we should hold, with the relator, that the trial judge and the plaintiff were bound by the notice of the prohibition which reached them before the case in question had been tried and decided, and that all that was thereafter done should therefore be declared to have been illegally done, we should have here presented the singular situation in the same court and upon the same day, of a litigant being held to have been in the exercise of a plain legal right in obtaining a trial and judgment in a civil case, and of a writ of prohibition issued to restrain him from so doing being held to have been wrongfully obtained, and yet, by reason of the wrongful obtention of the writ'of the judgment, otherwise rightfully obtained, being annulled, and the judge by whom it was rendered punished for doing that which, but for such wrongful writ, would have, been rightfully dome. We, however, .pretermit further consideration of the question thus presented, in view of the conclusion at which we have arrived, that the notice which reached respondent of the order for the writ in question was not such as to bind him.
[1, 2] This court was specially vested with “control and general supervision” of all inferior courts, and “with power to issue writs of certiorari, prohibition, mandamus, quo warranto and other remedial remedies,” by article 90 of the Constitution of 1879, and, some time prior to 1896 (though how long we have not endeavored to ascertain), the court adopted rule 12, the first and second paragraphs of which read as follows:
“L No application for writs of mandamus, prohibition, certiorari, and the like will be entertained by the court, unless previously properly filed and docketed in the clerk’s office.
“2. The court will entertain no application for writs of prohibition, mandamus, and the like, unless previous notice of intention to make such application shall have been given to the presiding- judge of the lower court, and to the, opposing party or his counsel; the service of such notice to be made to appear, by affidavit.”
In the Constitution of 1898, art. 94, the words “or any justice thereof” were added to what would otherwise be a reproduction of article 90 of the Constitution of 1879, and article 94 of the Constitutions of 1S9S and 1913 reads in part:
“Art. 94. * * * The court, or any justice thereof, shall have power to issue writs of certiorari, prohibition, mandamus, quo warranto, and other remedial writs.”
The two paragraphs of rule 12, which have been quoted, remain as originally written, and, as we take it, apply as well to applications which are presented to the members of the court as to those which are presented to the court; since we find no reason for supposing that the court intends thereby to prescribe one rule for itself and another for its members. Beyond that,' the rule, in itself reasonable, conforms to the spirit of those provisions of the Code of Practice which relate to the issuance of the writs in *221 question, and which plainly contemplate the filing of a petition in a court of record as a condition precedent to the obtention of such writs. C. P. arts. 836, 840 et seq., 846, 847, S48, 849, 850, 851, 852, 858, 867, 872. The last-cited article reads, in part:
“Article 872. All mandates treated of in the second section of this chapter, shall be issued by the clerk upon the order of the judge, in the name of the state and of the court which renders them, shall be sealed with the seal of such court, and signed' by the clerk in his official character. These mandates shall be delivered to the sheriff, who shall serve them on the person to whom they are directed.”
Occasion will frequently present itself, however, upon which a great wrong would be perpetrated if a person, actually informed of the existence and terms of an order of court, though not served therewith through official channels, were permitted, with impunity, to defeat the execution of such order, in advance of its service, by doing the thing prohibited by it.
It is therefore generally held that, where one is in court when an order is made, or when he h^is actual -knowledge of it, no matter how obtained, he is as much bound to obey it as though it had been served on him. 4 Enc. of PI. & Pr. 777, 778; 9 Cyc. 12; 22 Cyc. 1013; Alverson v. Judge, 105 La. 279, 29 South. 705; Blaise v. Security Co., 124 La. 979, 50 South. 816 (Syl. 3). In Alverson v. Judge, supra, it was said (105 La. 279, 29 South. 707):
“In the matter of the obligation of a particular individual to obey a particular order of a particular court, such court is not seised of jurisdiction either ratione personae or ratione materia until a suit of some sort is instituted by virtue of which it acquires the right to make the order.”
It seems hardly necessary to add that the rules adopted by this court, within the limits of its powers, have the force of law, and apply as well to the court as to those who have business before it, and that whatever power of amendment, suspension, or rescission may exist is vested in the court, and is not to be exercised without reasonable notice and to-further the ends of justice.
Applying the law and the principles thus considered to the facts of this case, we are of opinion that the information conveyed by relator’s counsel to the respondent judge, on July 29th, that they had obtained an order, upon a petition which had not been filed in this court, imposed upon him no obligation to-suspend proceedings in the case out of which this controversy has arisen; and we find no law, and cannot assume to establish a precedent, to the effect that a judge of a district court, whether engaged in the trial of a case or otherwise occupied, owes the duty of attending calls through the telephone, even though he may have reason to suspect that the messages sought to be delivered concern the business of his court. The telephone is-a new invention compared to the Code of Practice, and, if they are to be reconciled, in the practical administration of justice, it must be done by the General Assembly. So far, and generally, the trial judges throughout the state, in the exercise of the discretion vested in them, have shown a most commendable disposition to relieve the litigation with which they are called on to deal of unnecessary complications by affording opportunity for the review of their rulings without at all times exacting the rigor of the law in the matter of notice and service, and we find no reason to doubt that they will go on in the future as they have done in the past. Counsel who represent the relator herein appears to misunderstand or underrate the power of a court to rectify an error into which it -may have fallen, and more particularly an error into which it has been led by those who seek, an advantage thereby.
They say in the brief herein filed by them:
“The judge attempts to excuse his conduct [referring to his disregard of the information that was conveyed to him upon the subject of the-issuance of the writ of prohibition] on the *223 ground that he was led to believe that it was agreeable to all parties for him to declare that his court was in vacation. No one told him that the consent of all parties had been obtained for this to be done. Mr. Nettles only pretended to speak for the Ooushatta bar, as will appear by his affidavit. No one pretends that there was the slightest objection by that bar to postponement of the court. Indeed, it is conceded that every member of that bar joined in a request for a postponement of that term of the court. In his answer to the rule for contempt, the judge says that in a letter from Mr. Wilkinson the opinion was expressed that Judge Hall, in all probability, would not object to the postponement of court. No one pretended to have consulted Judge Hall about it. And the letter referred to did not state, either expressly or otherwise, that Judge Hall had been actually consulted, but, in all probability, he would interpose no objection to the court taking its recess. * * * But, conceding for the sake of the argument that the judge was acting under the impression that Judge Hall had consented for him to postpone court, what earthly difference does that make? He adjourned for his vacation under the Constitution of this state, and he could not recall that order, except in open court, and this he did not do. We assume that it will be conceded that no one intentional-' ly misled him, and, if he acted without making full inquiry, it was his fault, and not Mr. Nettles’.”
When to the statement contained in Mr. Wilkinson’s letter there was added the statement of Mr. Nettles, made in open court, that all the lawyers and litigants desired the adjournment, we are of opinion that the judge was justified in assuming (without cross-examining the counsel by whom the statement was made, with the view of ascertaining whether he really meant what he said, or whether, in his own mind, he was excepting his opponent in perhaps the most important case on the docket) that “all the lawyers and litigants” meant all the lawyers and litigants who were interested in the cases to be affected by the adjournment. At all events, the judge ordered the adjournment under a misapprehension superinduced by the statements mentioned, and the consequent continuance of the plaintiff’s case inflicted upon him a serious injury, for which it was the duty and the right of the judge to find a remedy, provided he could do so without wronging some other innocent person. The defendant was not, under the circumstances, entitled either to profit by the error or to complain of its rectification. But, if it- had thereby been placed in a worse position on July 28th, when its counsel were informed of the reassignment of the case, than it occupied on July 27th, when, at the instance of its counsel, the case was continued, it should have made that fact known to the judge, instead of again obtaining an order to which it was not entitled.
In Chretien v. Poincy, 33 La. Ann. 131, the appellant had obtained an order from this court extending the time for the filing of a transcript, and, on motion to dismiss the appeal, the attention of the court was called to the fact that the application had been filed too late; whereupon the appeal was dismissed, and it was said:
“The court can grant no valid order in contravention of law, and, when surprised, as in this case_, into an error of computation of time, will rescind its own orders without special motion to that effect. In making such motions, attorneys must be careful to be within the plain requisites of the law, or else they will eventually be deprived of any relief which may be granted inadvertently.”
See, also, Oertling v. Commonwealth Bonding & Casualty Co., 134 La. 26, 63 South. 611.
For the reasons thus assigned, the order heretofore made in this proceeding is now rescinded, and relator’s application is rejected, and the proceeding dismissed at its cost.
LAND, J., concurs in decree.

Ante, p. 195.