In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by JAMES A. BEHA, Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Conserve the Assets for the Benefit of the Creditors of the SECOND RUSSIAN INSURANCE COMPANY and the Interests of its Policyholders, Creditors, Stockholders and the Public.

Matter of Claim of BONYNGE & BARKER.

Supreme Court, New York County, March 26, 1930.

*Bonynge & Barker* [*Paul Bonynge* and *Robert J. Sykes* of counsel], for themselves as claimants.

*Clarence C. Fowler* [*James F. Donnelly, John M. Downes* and *Alfred C. Bennett* of counsel], for the Superintendent of Insurance of the State of New York.

McCook, J. The State Superintendent of Insurance and the claimants, Messrs. Bonynge & Barker, have respectively excepted to the report of the learned referee, who fixed the fee of the latter at $22,000 and also awarded them their full disbursements of $2,819.40, or a total of $24,819.40.

According to the contention of the Superintendent nothing is due on either head, while the claimants say that the award for fees is inadequate and that they are entitled to the full amount of their bill of $43,690, or, with the disbursements, $46,509.40. The Superintendent's exceptions are based on the theory that the services rendered and disbursements made were not for the benefit of the United States Branch of the Second Russian Insurance Company but for that of certain of its directors, because the branch was doing no business, while the home office in Russia had been destroyed, with its assets in the hands of the Soviets; that these directors not only had no authority to employ counsel in the New York proceedings, but that such acts on their part were not acts of conservation, and on the contrary were governed by an intention to draw out the funds and take them over for their own benefit; that no employment of the claimants by the managers of the United States Branch was shown, and that if there had been such hiring it was beyond the power and authority vested in these managers.

In the opinion of the court the evidence received by the learned referee was, as he finds, sufficient to establish such employment and the power or authority lodged in such managers was adequate for the purpose. Moreover, the Court of Appeals has expressly passed upon the latter question in *Matter of Second Russian Insurance Co.* (250 N. Y. 449), which held that the three named directors (Messrs. de Sevaux, Miller and Savitch, the very ones whose authority is attacked by the Superintendent in the within proceeding) at least had sufficient standing or apparent authority, under all the circumstances, to petition the court for some equitable relief regarding these funds. (See, also, *James & Co.* v. *Second Russian Insurance Co.*, 239 N. Y. 248.)

In spite of having been notified several years before by the United States Department of State that the decrees of the Soviet

Government were without any force, the New York Insurance Department continued to recognize the existence of these Russian companies, permitted them to do business and incur obligations, including the employment of counsel, to receive premiums and otherwise to do everything that a going insurance company could do. Claimants' first services were rendered in connection with opposing certain amendments to the Insurance Law; they were reasonably necessary and proper to defend and protect the interests of their client. The most important part of the work done, however, was in the course of litigation connected with a petition of the Superintendent of Insurance of New York for an order of liquidation of the United States Branch of the Second Russian Insurance Company.

When this proceeding was instituted in February, 1925, there is no dispute that the company had gross assets of upwards of $1,000,000 and net assets of over $450,000. It was solvent and could not have been disturbed except on the ground taken in the petition, namely, that the further continuation of its business would be hazardous by reason of events and conditions in Russia due to the Bolshevist revolution and the rule of the Union of Soviet Republics. Of course, this ground of liquidation has now been sustained. At that time, however (February 11, 1925), it was novel and unprecedented, at least as applied to the situation in the Second Russian Insurance Company, which was fully justified in resisting and opposing the Superintendent's application and seeking to defeat it, since such a course had reasonable prospects of success and acquiescence would have meant surrender of its very life.

Accordingly, the claimants were employed as counsel, and as such counsel they vigorously and ably supported its side of a litigation extending over more than a year and involving eleven matters before the Appellate Division and two before the Court of Appeals. In the arguments before the Court of Appeals claimants retained two former judges of that court, whose fees are included in the claim now under consideration. Mr. Barker, of the claimants' firm, is an experienced insurance lawyer of fifteen years' standing in that specialty, commanding the highest rates of professional compensation. He spent almost all his time upon the litigation and also the time of his partners and of lawyer assistants in the claimants' office. These services were reasonably necessary and proper. Considering that their client had for more than ten years been doing business in the State of New York, with the knowledge and consent of the Superintendent of Insurance and under his certificate and license, its officers were not only justified in employing every likely means to

maintain its rights, but bound so to do, and its counsel were amply warranted in doing everything they did in their professional capacity. That they were ultimately unsuccessful, after varying fortunes, is no answer to their claim of compensation for services upon a *quantum meruit* and for the return of their expenditures.

This conclusion is supported by the authorities, and especially by *Barnes* v. *Newcomb* (89 N. Y. 108). The cases cited by the Superintendent to the contrary do not appear to be in point. It is perhaps some answer to the Superintendent's assertion of unnecessary and valueless work, performed, as he claims, without authority, that at an earlier stage, and after receiving the proof of claim, he allowed to claimants a sum in excess of their disbursements, thereby conceding some amount to be due for services, although he later attempted to withdraw the concession.

The sole remaining question is whether the learned referee's award for services is fair; whether it is excessive or inadequate. Mr. Barker testified as a witness to the facts already mentioned. He qualified as an expert of standing in his specialty, and established beyond dispute the important, difficult and highly technical quality of the litigation, the exacting nature of the professional assistance required, and the great value of the services rendered by his office, which he estimated for the purposes of this claim at $40 per hour for himself and $20 per hour for his assistants, although he said his charge for similar work was ordinarily at least $50 to $75 per hour. Another experienced lawyer, also called as an expert, estimated the value of claimants' services as over $50,000, and he was not even cross-examined. While it is true that neither referee nor court is bound to accept such expert testimony, even if uncontradicted, the absence, as here, of any contradictory evidence is not without significance. Every element to support substantial fees, except ultimate success, was present — a large sum of money involved, a difficult task, a great amount of time spent by experienced and skillful counsel, and a reasonable and compelling necessity for the services. In the opinion of this court the full claim herein should be allowed, namely, $43,690 for services, $2,819.40 for disbursements, a total of $46,509.40. The claimants' exceptions are accordingly sustained and those of the Superintendent of Insurance overruled. Settle order on notice.