[Civ. No. 8951. Second Appellate District, Division One.—May 12, 1933.]

TIFFANY PRODUCTIONS OF CALIFORNIA, INC., LTD. (a Corporation), et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Sam Wolf and Harry J. Miller for Petitioners.

Everett W. Mattoon, County Counsel, Beach Vasey, Deputy County Counsel, and Martin Gang for Respondents.

HOUSER, J.—From the record herein it appears that at a time some months preceding the date of the application to this court for the issuance of a writ of prohibition, by means of which the respective rights of the parties regarding the issues here involved are proposed to be tested, the petitioners brought an action in the superior court against James Cruze Productions, Inc., and James Cruze; and as incidental to such action, caused a writ of attachment to issue by authority of which certain personal prop-

erty belonging to defendants in that action was seized and held as security for the payment of any judgment which thereafter might be rendered in the action in favor of the plaintiff. As a statutory prerequisite to the issuance of the writ of attachment, by direction of the clerk of the court the plaintiff in the action was required to, and did, furnish an undertaking in the sum of $7,500. Thereafter, by motion presented to the superior court, the defendants sought to have the amount of that undertaking substantially increased. By order of the court that motion was denied. On a so-called "re-hearing" of said matter, its former order by which an increase in the amount of the undertaking was denied in effect was "affirmed". About two months after said "order of affirmance" was made, based upon the additional fact that possible or probable increase in accrued damages to the defendants had resulted from the issuance of the writ of attachment, the defendants presented a third motion to increase the amount of the undertaking;—which motion was granted. On application by the plaintiff to this court for a writ of prohibition, an order was issued by which the respondent herein was temporarily restrained and prohibited from the enforcement of its order increasing the amount of said undertaking; and at the same time the respondent was directed to show cause on a date specified why an order should not be entered by which the said temporary order of the court in the matter should be made permanent.

The first question presented by the petitioner, that is, whether following the act of furnishing an undertaking on the issuance of a writ of attachment in the amount demanded by the clerk of the court, as required by the provisions of section 539 of the Code of Civil Procedure, on motion of the defendant in the action the superior court is authorized to increase the amount of such undertaking, is settled in the affirmative by the ruling in the case of *Francis* v. *Superior Court*, 58 Cal. App. 618 [209 Pac. 80].

Somewhat reduced in form, the second question propounded by the petitioner herein in substance is whether the ruling by the court on the first motion to increase the amount of the undertaking was *res judicata*. If it was, of course it should follow the ordinary rule obtainable with reference to judgments; that is to say, that the court there-

after had no authority by its order either to modify, or to reverse the former order made by it. In other words, if the first order in question ranked as a judgment, the court thereafter was unauthorized to disturb it in the manner or by the method adopted by the defendant for that purpose. And although disaffirming any intention to accurately define what is meant by the expression *"res judicata"*, as a starting point for ensuing observations it may be assumed that included within the boundaries of a complete exposition of the significance which properly may be ascribed to the term is the general doctrine that in any action or proceeding an issuable fact once legally decided therein is thereafter beyond dispute as between or among the parties either in that or in any other action or proceeding in which the same parties or their respective privies may be litigants. But the simple pronouncement of such a legal principle, although possibly helpful in attempting to arrive at a correct conclusion of the question here involved,—in the face of judicial decisions which may appear to be not entirely harmonious one with the other, does not furnish a clear and infallible guide. An examination of the authorities reveals the situation that many of the different orders which ordinarily are incidental to the administration of an estate in probate are regarded as final and conclusive (15 Cal. Jur. 117 et seq.), and consequently do not admit of a renewal of a motion for the granting of an order theretofore refused. Illustrations of such rulings may be found in an application for family allowance, or to set aside a homestead (*Estate of Harrington,* 147 Cal. 124 [81 Pac. 546, 109 Am. St. Rep. 118]); order of sale (*Estate of Bazzuro,* 161 Cal. 71 [118 Pac. 434]); an order of partial distribution of an estate (12 Cal. Jur. 156); the discharge of an administratrix (*Nason* v. *Superior Court,* 39 Cal. App. 448 [179 Pac. 454]; *Crane* v. *Superior Court,* 42 Cal. App. 285 [183 Pac. 606]). And the rule of *"res judicata"* has been made applicable to various other motions and orders in civil proceedings. For example, to the denial of a motion to issue execution (*Wheeler* v. *Eldred,* 137 Cal. 37 [69 Pac. 619]); to the denial of a motion by an insolvent debtor to a right to the proceeds of a crop on land set apart as a homestead (*Sunkler* v. *McKenzie,* 127 Cal. 554 [59 Pac. 982, 78 Am. St. Rep. 86]); to the change of

place of trial (*Karst* v. *Seller,* 45 Cal. App. 623 [188 Pac. 298]; but see *Johnston* v. *Brown,* 115 Cal. 694 [47 Pac. 686]); to the vacation of an order of execution and to quash execution (*Creditors Adjustment Co.* v. *Newman,* 185 Cal. 509 [197 Pac. 334]). See, also, *Lake* v. *Bonynge,* 161 Cal. 120 [118 Pac. 535, 539]. In the case last cited the following appears as a quotation from Freeman on Judgments:

"The tendency of the recent adjudications is to inquire whether an issue or question has been in fact presented for decision and necessarily decided, and if so, to treat it as *res adjudicata,* though the decision is the determination of a motion or summary proceeding, and not of an independent action. This is especially true when the decision did not involve a mere question of the proper form or time of proceeding, but was the determination of a substantial matter of right, upon which the parties interested had a right to be heard upon issues of law or fact, or both, and these issues, or some of them, were necessarily decided by the court as the basis of the order which it finally entered granting or denying the relief sought."

And in *Karst* v. *Seller,* 45 Cal. App. 623, 627 [188 Pac. 298, 300], which, as hereinbefore indicated, related to a motion for change of place of trial, it was said:

"The action of the court on the questions involved in the order for change of place of trial has all the characteristics of a final judgment. Issues of fact are presented and tried on their merits, and an appeal lies from the order. We find no California decisions on this point, but the general rule in other jurisdictions seems to be that if a motion involves a substantial right, and a full hearing is afforded thereon, and the order made on such motion is appealable, such order is a final adjudication of all matters involved in the motion. (Ann. Cas. 1914D, 975, note; *Hoge* v. *Norton,* 22 Kan. 265; *Truesdale* v. *Farmers' Loan etc. Co.,* 67 Minn. 454 [64 Am. St. Rep. 430, 70 N. W. 568]; *Bennett's Admr.* v. *Russell's Extrx.,* 39 Mo. 152 [90 Am. Dec. 457]; *Fitterling* v. *Welch,* 76 Minn. 441 [79 N. W. 500]; *Rogers* v. *McCord-Collins Co.,* 19 Okl. 115 [91 Pac. 864]; *Smith* v. *Zalinski,* 94 N. Y. 524.)"

On the other hand, notwithstanding the inclusive character of such declaration of a legal principle, the rule has

been repeatedly announced in the most positive manner, not only by the courts of this state but as well generally throughout the United States, that in its "strict sense" the doctrine of *res judicata* has no application to decisions either on "interlocutory motions or motions in the course of practice". (42 Cor. Jur. 558; 19 R. C. L. 676; 18 Cal. Jur. 667; 15 Cal. Jur. 112; *Estate of Harrington, supra; Gay* v. *Gay,* 146 Cal. 237 [79 Pac. 885] ; *Johnston* v. *Brown, supra; Bowers* v. *Cherokee Bob,* 46 Cal. 279; *Ford* v. *Doyle,* 44 Cal. 635; *Johnson* v. *Nelson,* 43 Cal. App. 113 [184 Pac. 501] ; *Lawson* v. *Lawson,* 15 Cal. App. 496 [115 Pac. 461, 464].)

And as an additional indication that a ruling, at least on an ordinary motion, is not to be considered as conclusive as between or among the parties to the action or proceeding either of the facts therein at issue or of the law applicable thereto, sections 182 and 183 of the Code of Civil Procedure include provisions to the effect that if a motion be "refused with liberty to renew the same", no valid objection on the ground of *"res judicata"* may be sustained. Moreover, by many different decisions emanating from the courts of this state, it has been directly held that the refusal to grant, or the granting of, permission to renew a motion is a matter of discretion with the trial court. (*Gay* v. *Gay, supra; Ventura County* v. *Clay,* 119 Cal. 213 [51 Pac. 189] ; *Johnston* v. *Brown, supra; Kenney* v. *Kelleher,* 63 Cal. 442; *Bowers* v. *Cherokee Bob, supra; Ford* v. *Doyle,* 44 Cal. 637 ; *Johnson* v. *Nelson, supra; Lawson* v. *Lawson, supra;* 18 Cal. Jur. 660.)

But in recognition of the authorities generally, and admitting the broad power on the part of the trial court to entertain successive motions with regard to the decision either of a disputed matter of fact, or matter of law dependent upon the fact thus established, the further conditional principle has been declared that ordinarily leave to renew a motion should be predicated upon the assumption that at the hearing thereof the moving party can and will produce material and relevant evidence additional to that which he presented on the hearing of the former motion and that the facts which gave rise to such additional evidence either occurred after the date of such former hearing, or that they were 'not presented at that time "by

reason of surprise or excusable neglect of the moving party". (*Ford* v. *Doyle, supra; Creditors Adjustment Co.* v. *Newman, supra; Wheeler* v. *Eldred, supra.* See, also, *Lawson* v. *Lawson, supra.*)

However, as indicating a modification of such latter principle, it has been ruled that because the granting of leave to renew a motion "is within the legal discretion of the court", where it appears that the order was made "upon the same facts more fully stated", ordinarily the Supreme Court "ought not to interfere". (*Kenney* v. *Kelleher*, 63 Cal. 444.)

A reference to some of the authorities by which it has been held that as to certain motions and ensuing orders the doctrine of *res judicata* is inapplicable may be helpful: To vacate a default judgment (*Kenney* v. *Kelleher, supra*); to vacate sheriff's return on execution and to order a new sale (*Johnson* v. *Nelson, supra*); to change place of trial of action (*Johnston* v. *Brown, supra;* but see *Karst* v. *Seller, supra*); to dismiss action (*Ventura County* v. *Clay, supra; Andersen* v. *Superior Court,* 187 Cal. 95 [200 Pac. 963]; *Pacific States Corp.* v. *Grant,* 87 Cal. App. 108 [261 Pac. 1100]); in effect to be placed in possession of property (*Bowers* v. *Cherokee Bob, supra*); to issue an *alias* writ, or to require sheriff to execute writ (*Ford* v. *Doyle, supra*); to vacate order of execution of judgment on ground that the summons never was served (*Cooper* v. *Miller,* 165 Cal. 31 [130 Pac. 1048]; see, also, *Boggs* v. *Clark,* 37 Cal. 236); for alimony (*Gay* v. *Gay, supra*).

In the case of *Andersen* v. *Superior Court, supra,* it is said: "Section 182 (Code Civ. Proc.) does not apply to the renewal of a motion refused for informality of the moving papers or proceedings, or in cases where leave to renew is given; and, *in any event, does not go to the jurisdiction of the court to entertain a second motion.* . . . "

Concretely, the point urged by the petitioner is that the respondent court having once ruled adversely on the motion to increase the amount of the undertaking, at least in the absence of additional facts, or inadvertence, or mistake of fact, the said court thereafter was without jurisdiction either to vacate its former order, or to make a new order by which the amount of the undertaking would be increased.

On the part of respondent no claim is made that the ruling on either the first motion, or on the "rehearing" thereof,

was made either by reason of any inadvertence or because of any mistake of fact. However, it is suggested that an additional material fact appeared on the hearing of the last motion which was not presented on the hearing of either of the preceding motions, in that, notwithstanding the fact that the affidavits presented in support of each of the several motions to increase the amount of the undertaking contained the allegation that the total damages which would be sustained by the defendant by reason of the alleged wrongful attachment was the sum of $60,000, the allegation contained both in the first motion and in the so-called "rehearing" thereof was that the damages which then had accrued amounted to the sum of $17,000; whereas, in the affidavits which supported the last motion the accrued damages were stated as, and fixed at, the sum of $40,000. It will thus be noted that the ultimate damage which the defendant claimed would result from the alleged wrongful attachment remained consistently stationary throughout the several motions, to wit, at the sum of $60,000; but that a considerable difference existed between the amount of damages which had accrued at the time the first order was made and the amount which had accrued at the time when the last motion was presented.

With reference to the amount of the undertaking, the requirement of the controlling statute (sec. 539, Code Civ. Proc.) is that it shall be "in the sum not less than two hundred dollars and not exceeding the amount claimed by the plaintiff, . . . to the effect that if the defendant recovers judgment, the plaintiff will pay all costs that may be awarded to the defendant and all damages which he may sustain by reason of the attachment, . . . " Aside from the item of "costs", it is clear that the entire concern of the defendant in the matter of damages is the *total* amount of damages "which he may sustain by reason of the attachment". Although the amount of damages which a defendant may suffer from day to day, or from month to month, during the progress of the action is not made the statutory basis for a determination of the amount of the required undertaking, it is of course plain that the total amount of damage may be made up from several different items, as to each of which, from various and sundry causes, the amount may vary by an increase or by a decrease thereof. In the first instance, upon the application by the plaintiff

for the writ, the clerk of the court is interested in casually ascertaining, not necessarily what the details or the items of the total damage which may result to the defendant may be, but rather has his attention centered· on or attracted to the question of what damages in the aggregate may be sustained by the defendant from the wrongful issuance and the execution of the writ. ■ And to some extent, the same situation applies to the court on the hearing of the motion to increase the amount of the undertaking. Although the ultimate fact for determination is what probable total damages will the defendant sustain should it finally be determined that the writ of attachment was wrongfully issued and executed, on the presentation of a question of whether the undertaking should be increased, it is evident that the various items of either accrued or of anticipated damage may be material in reaching a proper conclusion. If new or additional items of damage appear to have resulted, they may have a distinct bearing upon the total amount to be suffered by the defendant; and if it appear that as to any formerly enumerated or considered items the damage has so materially increased as substantially to affect the gross amount of damage, such fact also should have a part in enabling the court to reach a just conclusion. At the outset, on the original application to the clerk the allegation with reference to anticipated damage may be more or less conjectural in its nature; but as time progresses and the facts with reference to the various items of anticipated damage become established, either as dependent and inevitable, or as vague, unreliable, or contingent, the more certainly and accurately the ultimate damage to the defendant may be computed. And so it becomes evident that a positive statement under oath of an increased amount in an item or items of either an accrued damage to, or of one thereafter to be suffered by, the defendant becomes an allegation of a material additional fact which may justify a renewal of the motion to increase the amount of the undertaking on the attachment, and which fact properly may be considered by the court in arriving at a conclusion.

■ Although by the language employed in sections 182 and 183 of the Code of Civil Procedure it may be understood that preceding the renewal of a motion theretofore refused "liberty to renew the same" must first be obtained from

the court, it has been held that the hearing of the second motion and the granting of the order sought thereby constitute an implied permission to renew the motion. (42 Cor. Jur. 525, and authorities there cited; *Kenney* v. *Kelleher, supra; Bowers* v. *Cherokee Bob, supra.*)

Reverting to the order under consideration, it becomes clear that it may not be used "as the basis of the order which is finally entered granting or denying the relief sought". The undertaking on a writ of attachment is merely a requirement precedent to the issuance of the writ. Even the writ itself does not serve as a "basis" for any judgment which may be rendered in favor of the plaintiff in the action. The writ is entirely incidental to the action; it may, or it may not, be issued. In no way does its issuance tend to a determination of the issues in the action, nor does it assist in a conclusion with reference thereto.

Nor is the order here in question appealable. (Sec. 963, Code Civ. Proc.)

The conclusion of this court is that the lower court had jurisdiction in the premises. It follows that the writ of prohibition issued out of this court should be discharged. It is so ordered.

Conrey, P. J., and York, J., concurred.

An application by petitioners to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 10, 1933.