[Civ. No. 12106. Second Appellate District, Division One.—October 15. 1940.]

LE ROY ANDERSON, Respondent, v. GREAT REPUBLIC LIFE INSURANCE COMPANY (a Corporation) et al., Appellants.

182

Earl Warren, Attorney-General, John L. Nourse, Deputy Attorney-General, John L. Flynn and E. P. Fay for Appellants.

Le Roy Anderson, *in pro. per.,* and Frank L. Kostlan for Respondent.

DORAN, J.—This is an appeal by defendants from a final judgment in favor of plaintiff in an action instituted by plaintiff to recover the reasonable value of certain services alleged to have been rendered by him as an attorney. The judgment was for the sum of $10,000 and costs, and the same was ordered by the court to be paid out of funds in the possession of appellant Carpenter, the Insurance Commissioner of the State of California, as conservator of the Great Republic

Life Insurance Company, the corporation named as one of appellants herein.

The services of plaintiff and respondent here in question were rendered as one of the attorneys of record for the Great Republic Life Insurance Company (hereinafter referred to as the "insurance company") in a proceeding instituted by the Insurance Commissioner of the State of California seeking generally to liquidate the business of said insurance company in the State of California on the ground that the company was insolvent. The proceeding was commenced in the Superior Court of Los Angeles County on March 6, 1934, and on said date the court on the petition of the commissioner in said proceeding, issued an order to the insurance company to show cause why, among other things, the commissioner should not take over the assets and control the business of the insurance company in the State of California, and issued at the same time a temporary restraining order enjoining the insurance company and its officers from transacting any business or disposing of any of its property. The temporary restraining order also provided that the Insurance Commissioner should take over the property of the insurance company forthwith.

The insurance company first appeared in the proceeding by its attorney Stephen C. Treadwell on March 17, 1934, when it was stipulated that an order might be entered defining the duties of the Insurance Commissioner in retaining possession of the property of the company pursuant to the aforesaid order to show cause and restraining order. The stipulation was entered into without waiving the right of the company to a defense upon the merits. The order defining the duties of the Insurance Commissioner also modified the restraining order to enable the officers of the company to act for it when under the direction and with the consent and approval of the Insurance Commissioner, and was made by the court on March 17, 1934.

On March 22, 1934, the board of directors of the insurance company authorized Mr. Treadwell to employ associate counsel for the insurance company, and it appears that immediately thereafter Mr. Treadwell engaged respondent. Respondent was substituted as one of the attorneys of record on March 23, 1934, and appears to have continued as such until November 23, 1937.

On application of the insurance company therefor, the court, in the proceeding above mentioned, made its order on May 3, 1934, awarding respondent the sum of $1,000 as "retainer fee" and ordering the Insurance Commissioner to pay the same out of the funds of the insurance company. This fee appears to have been divided equally with respondent's co-counsel Treadwell.

Thereafter, the insurance company having interposed an answer to a supplemental and second amended petition of the Insurance Commissioner, which answer admitted that the company's affairs were in a hazardous condition, the court on May 7, 1934, made its order appointing the Insurance Commissioner as conservator of the assets and business of the company and restraining and enjoining the company, its officers, agents and employees from transacting any further business and from disposing of any property of the company. About July 25, 1934, the Insurance Commissioner filed a supplemental and third amended petition asking, among other things, for authority to liquidate the business of the company, and issue was joined thereon by answer of the company filed August 13, 1934. Thereafter the answer was amended. It does not appear that the issues raised thereby were ever tried.

On application of the insurance company, the court on October 15, 1934, ordered the Insurance Commissioner to pay Stephen C. Treadwell, as chief counsel for the company, $6,000 on account of attorney's fees and $1,000 on account of expenses of litigation. The Insurance Commissioner filed a notice of appeal from said order, and thereafter upon agreement of the parties said appeal was dismissed, the said order for fees and expenses was vacated and a new order was made awarding the company's counsel, including respondent, $4,000 in addition to the $1,000 theretofore allowed, as above mentioned, and $500 as expense money. In its said order the court reserved the right to make further orders in respect to allowance for attorney's fees and expenses of suit. The order was made on October 18, 1934, and the fees were awarded in full payment for counsel's services to that date.

On June 25, 1936, there was filed an application for "additional and final" attorney's fees for counsel for the company in the said proceeding, which application was opposed by the commissioner, and was denied after hearing in department 33

of said court, the matter having been submitted, and a minute order entered thereon on October 7, 1936. Thereafter respondent, for himself alone, filed on Febraury 25, 1937, a petition for leave to sue for his fees and to be relieved from the force and effect of the injunction against suing the insurance company, and the petition was granted. In granting said petition the court appears to have considered the question of the denial of the previous application as a bar to said petition. Respondent then instituted the present action.

The respondent appears also to have filed a separate petition for an order to show cause why additional fees should not be granted, which matter was ordered off calendar.

The record reveals that in the foregoing proceeding the Insurance Commissioner applied for and was granted an order awarding Mr. Treadwell a fee of $2,900 for certain services rendered by Mr. Treadwell to the commissioner as conservator, from May 15, 1934, to August 1, 1935, which sum did not cover any compensation due Mr. Treadwell as counsel for the insurance company.

Upon the evidence presented in the present action, the trial court found that respondent's services as an attorney at law representing the insurance company in the above-mentioned proceeding, from October 18, 1934, up to and including November 23, 1937, were reasonably worth $10,000, and concluded that the order entered by the court in department 33 thereof, as above-mentioned, denying respondent's application for attorney's fees did not constitute *res judicata* as to the action herein, and that respondent was entitled to judgment as above set forth.

It should be noted that the court also found that respondent was not employed, retained or appointed to assist or aid or act as counsel for the Insurance Commissioner as conservator.

Appellants contend that no services were rendered by respondent of the reasonable value of $10,000; that respondent was paid in full for all compensable services rendered by him; that the court was without jurisdiction to allow fees; and, that under the doctrine of *res judicata,* the instant action was barred by the denial of the previous application for fees, above noted.

Appellants also contend that in any event there is no legal obligation due to respondent and enforceable by plenary

action and argue in effect that even if it be assumed that the powers of the court in a proceeding for conservatorship over a delinquent insurance company are analogous to those of a court in an ordinary receivership, yet the matter of the allowance of fees to an attorney for the delinquent insurance company is one addressed to the sound discretion of the court and is not one of absolute right and respondent could not establish a charge as a matter of law against the fund in the hands of the conservator, citing as authority the case of *Barnes* v. *Newcomb*, 89 N. Y. 108. The point is well taken and the situation in the Barnes case is identical with that presented here.

In reply to this point respondent argues in substance that the court could properly grant respondent leave to sue for his fees in an independent action while the application for fees remained pending off calendar awaiting the outcome of the suit; that there is no distinction between actions at law and in equity in California, and respondent's action was filed, first, as an equitable action asking the court, in its discretion, to allow a reasonable amount as fees; and second, upon a *quantum meruit*. In that connection, respondent overlooks the distinction between a matter of absolute right and a matter resting in the discretion of the court and also overlooks the fact that respondent's causes of action as set forth in the complaint herein are all based upon either an express contract or one implied in law and all necessarily assume a legal obligation on the part of the defendants to pay for the services rendered. The judgment of the court allowing respondent the fee as prayed for and ordering the same paid out of the funds in the hands of appellant Insurance Commissioner was not rendered through the exercise of discretionary power but as the necessary consequence of conclusions of law drawn from the facts found. The court concluded that as a matter of law respondent was entitled to be paid the fees in question by appellants out of said funds.

The proceeding against the insurance company was instituted under the provisions of the act of the legislature entitled "An Act to Provide for Proceedings against and Liquidation of Delinquent Insurance Corporations and Associations", (Stats. 1919, p. 265; amended 1921, p. 1017; 1931, p. 2375; Act 3739, Deering's Gen. Laws, 1931), which act was supplanted in 1935 by the applicable sections of the

Insurance Code. (Secs. 1010–1061, art. 14, ch. 1, pt. 2, div. 1.) Such a proceeding is so instituted by the insurance commission as an officer of the state acting in the public interest. (*Mitchell* v. *Taylor,* 3 Cal. (2d) 217, 219 [43 Pac. (2d) 803]; *Carpenter* v. *Pacific Mutual Life Insurance Co.,* 10 Cal. (2d) 307, 329 [74 Pac. (2d) 761].) The Insurance Commissioner's status in this respect was clearly the same under the former act as under the present code. ■ However, it is to be noted that in either case the duties of the commissioner as conservator are in the nature of those of a receiver or trustee. Both the former act and the code expressly so provide. (Secs. 6 and 10, Act 3739, Deering's Gen. Laws, 1931; sec. 1057, Insurance Code.) It is also to be noted that in neither the former act nor in the code are the jurisdictional limits of the court narrowly drawn. Section 1058 of the Insurance Code expressly provides that in any pending proceeding the court in which such proceeding is pending shall have jurisdiction to summarily hear and determine, in such proceeding, all actions or proceedings then pending or thereafter instituted by or against the person affected by the insolvency or delinquency proceeding. There is nothing in the former act to indicate that the jurisdiction of the court thereunder was less broad than under the provisions of the Insurance Code. There is nothing in either act which limits or constrains the exercise of the ample equitable powers of the superior court, (cf: *De Forrest* v. *Coffey,* 154 Cal. 444, 449 [98 Pac. 27]).

As far as the question here presented is concerned it makes little difference whether the proceeding was governed by the new law or the old, but section 4 of the Insurance Code, cited by respondent in his brief, should be borne in mind, it reads as follows: ''No action or proceeding commenced before this code takes effect, and no right accrued, is affected by the provisions of this code, but all procedure thereafter taken therein shall conform to the provisions of this code so far as possible.''

■ There is no express statutory provision for the allowance of fees for the attorneys of a delinquent insurance company in a proceeding of this nature. However, appellants concede that there are some instances in which attorney's fees are allowed by courts of equity in the absence of a contract and in the absence of a statute authorizing such allowance, but

argue also that a proceeding of this kind instituted by the Insurance Commissioner is a special proceeding of a statutory nature and that the jurisdiction of the court is limited by the provisions of the statute governing the proceeding. ■ There can be no doubt as to the validity of such contention, but as pointed out above, under the act by which the said proceeding was instituted the Insurance Commissioner became a receiver of the assets of the delinquent insurance company with the powers and duties of such receivers within this state. The last sentence of section 6, cited above, which provides for applications for liquidation of delinquent insurance companies, reads: ''If, on such application, the court shall direct the insurance commissioner to take possession of the property and conserve the assets of such corporation, the rights and duties of the said insurance commissioner with reference to such corporation and its said assets shall be those heretofore exercised by and imposed upon ancillary receivers of foreign corporations in this state''. And section 10 of the same act, above referred to, reads in full, as follows: ''In all cases arising under the provisions of this act where not otherwise provided the powers and duties of the Insurance Commissioner with relation to the property and assets and business of any corporation placed under his control shall be those heretofore exercised by and imposed upon receivers of corporations within this state''. There is nothing in the act to indicate that the jurisdiction of the court over the commissioner in the exercise of his duties and powers are any different from the jurisdiction ordinarily exercised over receivers of corporations generally. ■ There is but one exception to be noted, namely, that the court is without power to appoint a receiver, the Insurance Commissioner taking over that office under the act by virtue of his authority as an officer of the state. ■ It is clear that once the duties are thus assumed the commissioner is subject to the jurisdiction of the court to the same extent generally as are all receivers of corporations. This view is in accord with the principles set forth in *State Investment & Insurance Co.* v. *Superior Court,* 101 Cal. 135 [35 Pac. 549], cited by appellants, which holds that the superior court lacked jurisdiction to appoint a receiver, the statute then in effect providing for the Insurance Commissioner to assume that office, as does the statute here under consideration.

Appellants also argue in effect that because the said proceeding is an exercise of the police power of the state the liquidation proceeding therefore differs radically from an ordinary receivership proceeding. ■ Police power can never be used as an excuse for unreasonable, arbitrary action or improper discrimination. See *Carpenter* v. *Pacific Mutual Life Insurance Co., supra,* at page 329, for an application of the principles involved under the present Insurance Code. ■ Nor does the fact that the statute under certain circumstances permits the summary seizure of the property of a delinquent insurance company, alter the relationship of the commissioner as a receiver once he has assumed control of the assets. The statute provides in this respect that immediately after such summary action on his part the Insurance Commissioner must apply to the court for an order directed to the insurance company to show cause why the commissioner should not take possession of its property, thus providing for a hearing of the matter before the court. (Sec. 2a, Act 3739, *supra.*)

*North American Building & Loan Assn.* v. *Richardson,* 6 Cal. (2d) 90 [56 Pac. (2d) 1221], cited by appellants, in so far as the same is applicable to the questions here presented, merely holds that since the Building and Loan Association act makes no provision for the advancement or prepayment of costs the allowance of costs in a proceeding under the said Act should follow the customary course and be made dependent upon the determination of the cause on its merits. Such a question is quite different from that of the allowance of fees for resisting the appointment of a receiver, which latter question is one of equity, not one involving a technical statutory or legal right.

Since the act here in question constitutes the Insurance Commissioner a receiver of the delinquent insurance company with the powers and duties of receivers of corporations in this state, whether the insurance company should be allowed attorney's fees in defending itself in the proceeding presents a question no different in effect than if raised in connection with corporate receiverships generally. Neither party has cited any California authority in point and a search fails to reveal a California case on the question. However, there appears to be nothing in California law, statutory or otherwise, which precludes an application of the rule laid down in

*Barnes* v. *Newcomb, supra,* and enunciated in *Watson* v. *Johnson,* 174 Wash. 12 [24 Pac. (2d) 592, 89 A. L. R. 1527], the latter cited by respondent. That rule may be summarized as follows:

It is a general rule that where an application has been made for the appointment of a receiver for a corporation, attorneys' fees and expenses in resisting such application, if made in good faith and upon reasonable grounds, may become a valid claim against the receiver. Whether such attorneys' fees and expenses are to be allowed rests in the sound discretion of the court, in view of all the facts and circumstances, (Note, 89 A. L. R. 1531). If allowed, the question as to the amount thereof is likewise addressed to the sound discretion of the court. The claim of the officers of a corporation or of attorneys employed by them to be paid out of the funds in the hands of the receiver is not an absolute right, but it is entirely in the discretion of the court administering the fund to determine, first, the good faith and justification for such application, and second, if warranted, the amount to be allowed. (*Esarey* v. *Pierson,* 84 Ind. App. 109 [141 N. E. 87].) "Even if it turns out that a case is made for the interference of the state, so long as the defense was made in good faith and upon reasonable grounds, there is apparent justice in subjecting the property and fund involved in the litigation to expenses incurred in discharging a general duty cast upon the corporation and its trustees, to take all reasonable means for its protection." (*People* v. *Commercial Alliance Life Ins. Co.,* 148 N. Y. 563 [42 N. E. 1044]. See *Sims* v. *Homeseekers Fire Ins. Co.,* 120 W. Va. 459 [199 S. E. 69].) An exhaustive review of the principle and the cases thereon is to be found in *O'Malley* v. *Continental Life Ins. Co.,* 343 Mo. 382 [121 S. W. (2d) 834, 838 et seq.], a case involving a proceeding against an insurance company similar to the one here. It is interesting to note that the respective contentions of appellant and respondent in that case were substantially the same as those raised in the instant case. The allowance for fees, however, was denied in the O'Malley case on the ground that the evidence showed that even under the rule above stated the allowance was not justified. The Sims case, above cited, upheld the general rule aforesaid but denied the application for fees on the ground that good faith was lacking. The reason for the rule is revealed by the foregoing quotation from

*People* v. *Commercial Alliance Life Ins. Co., supra,* namely, a duty upon the corporation and its trustees to protect the property and assets of the corporation.

Upon the authorities above cited and the principle therein involved, it is clear that respondent's legal right to the fees sought, and, if said fees were allowed, the amount thereof, was solely a matter addressed to the sound discretion of the court in which the proceeding was pending. As noted above, it appears that respondent made an application so addressed, but also applied for leave to sue without waiting for his application to be passed on. This leave was granted, respondent's application for fees was put off calendar without being passed upon, and respondent proceeded with the present action for his fees. There was no basis for such a suit and the trial court erred in concluding upon the facts that respondent was entitled to his fees and in awarding respondent judgment therefor. As pointed out above, it cannot be argued that in so doing the court exercised discretionary power.

The proper proceeding would have been for the court to consider the application of respondent for fees and to pass upon the same in the exercise of its sound discretion. Should the application then have been denied, and it appeared that the court abused its discretion in such a denial, respondent would then have had recourse to an appeal from the order denying the fees.

The situation in *Barnes* v. *Newcomb, supra,* was virtually the same, as appears from the following quotation therefrom (p. 116) :

"In the present case the plaintiff made an application to the Supreme Court, on which application it would have been competent for the court to pass upon the merits of his claims, and afford him such relief as he was entitled to ; and in fact the court entertained the application, and made an order referring it to a referee to take proof of the plaintiff's claims and report the facts to the court. But as part of the same order they gave to the plaintiff the alternative privilege of bringing an action. He elected that course instead of going before a referee, and, on the proofs taken before him, appealing to the discretionary powers of the court. By so doing he assumed the burden of establishing that he was entitled to payment as matter of right, enforceable by action,

and not resting in his discretion. This right of action he has in our judgment failed to make out.

"We think, however, that justice requires that his claim be examined, and the discretion of the court exercised thereon. The court will have full power to determine for what services (if any) he should be allowed, and what, in its judgment, would be a reasonable and fair compensation therefor."

It should be noted that in the Barnes case, as in the instant case, the services for which fees were sought were rendered after the appointment of the receiver. At page 113 in the Barnes case the court states:

"We are of opinion that for the services rendered by the plaintiff to the corporation after the appointment of the receiver, an action against the receiver cannot be maintained. The company, or its officers, could not after that date subject the fund in the hands of the receiver to any legal liability."

■ One of the arguments advanced by appellants should not go unnoticed, because of the implication therein. Appellants argue that since respondent was employed after the insurance company had been restrained from transacting any business or disposing of any of the assets and since the commissioner was appointed conservator of the insurance company shortly after respondent was so employed, the insurance company lacked the capacity to contract and it likewise lacked the capacity to impose a lien or charge upon the assets in the custody of the conservator by authorizing an attorney to render services to it. If such an argument were valid, the result would be obvious. An insurance company proceeded against by the commissioner would be hamstrung in any effort to defend itself, the hands of its directors would be tied and there would be no effective recourse from unwarranted official action. If this were the case the effect would be to deny the company the right to counsel and hence to due process of law. Since in such a proceeding as this all the funds of the corporation are placed in the hands of the conservator, an arbitrary denial to the corporation of the use of any portion of such funds to pay attorneys' fees amounts to the same thing as a denial of the right to contract for the services of an attorney, the effect of which would be a denial of the right to defend at all.

In passing, comment should also be made as to the emphasis placed by respondent on the case of *In re People* v. *Beha*,

136 Misc. 715 [242 N. Y. Supp. 100], cited in support of respondent's contention as to the right to maintain the present action, and quoted in full in his brief. The decision there is one by the lower court concerning the report of a referee fixing counsel fees, and the exceptions taken as to the report. It is not the case of an action at law for the fees in question, but is obviously one where a trial court is considering the propriety of an allowance of counsel fees, in the exercise of its discretion in the matter.

While, in view of the foregoing, it is not the province of this court at this time to consider the question of the reasonableness of any fee awarded respondent, the application therefor not having been passed upon by the court below in the exercise of its discretion, the effect upon respondent's application of the denial of the prior application should be considered. That question has been here raised by appellants, in contending that the denial of the prior application was *res judicata* as to the question of allowance of fees to respondent.

In this connection, the trial court found that leave had been granted respondent to renew his application for fees, and respondent so contends on this appeal. The finding is not supported by the record. The minutes as to the order granting respondent leave to sue and placing his application for fees off calendar make no mention of leave to renew the previous application nor do they contain any reference to any order vacating the order denying the previous application, nor does the formal order of the court granting leave to sue contain any such provision. Nowhere in the record is there shown any order vacating the previous order made, or granting leave to renew the previous application. The application for fees which was denied as above mentioned was for "final and additional attorneys' fees" and is apparently intended to cover services rendered from October 18, 1934. The subsequent application covers services rendered over the same period and does not indicate specifically what additional services, if any, were rendered subsequent to the prior application. There is nothing which expressly shows it to be a renewal of the prior application. To all intents and for all purposes it appears to be merely a second and subsequent application of the same nature and for substantially the same services rendered. The minute order denying the previous

application reads as follows: "October 2, 1936—Application for attorney's fees comes on for hearing, Eugene P. Fay and John L. Flynn, Deputies Attorney General, appearing for the plaintiff, and LeRoy Anderson, S. C. Treadwell and L. G. Shelton for the defendants. H. A. Benjamin is sworn and testifies for the plaintiff. Matter is submitted. October 7, 1936—Application for attorney's fees heretofore submitted on October 2, 1936. The Court orders said application for attorney's fees denied." There is no indication that the denial of the application was made without prejudice or that the way was left open for further applications. While the record shows that on the subsequent application and application for leave to sue the court was advised as to the order denying the previous application and as to objections that the claim of respondent for fees was barred by that order, yet, as pointed out above, the court took no action regarding the same, other than to grant leave to sue for the fees, and left open the question of the effect of said minute order on the subsequent proceedings. Further, it is important to note that in the previous application respondent specifically prayed for compensation for future as well as past services, since in said application respondent set forth what future services would be required and stated his desire that said services so required be included in the application for fees.

As appears from the foregoing quotation from the minutes of the court, in evidence, a hearing was had on the application and the matter was submitted. Respondent's complaint in the instant action fails to show that it is for anything more than the services for which the previous application had been made. This is even more clearly shown by the fact that at the trial respondent testified that he was seeking his final fee and testified in substance that in computing the same at $10,000 he was not considering any services rendered after a time about the middle of 1936; and that he had not itemized his services or allocated the fee in any way. Respondent at the time of the trial also filed a supplement to his complaint to show that the amount sued for covered all services down to the time respondent severed his connection as attorney of record. In short, respondent sought a lump sum as his final fee regardless of what services had been rendered.

The situation here presented, therefore, is one in which an attorney for a party to a special proceeding has made applica-

tion, at a stage thereof, for final compensation for his services, including those to be rendered in the future, and after the court has denied that application, the attorney, several months thereafter, again applies to the court for the same compensation or for leave to sue therefor. In this connection, it should be pointed out that the subsequent application is not in strict compliance with the requirements of section 1008 of the Code of Civil Procedure in that it fails to show what new facts, if any, are relied upon. That section also provides that an order made contrary thereto may be revoked by the judge, justice or commissioner who made it, or vacated by a judge, or justice of the court in which the action or proceeding is pending.

In any event, the order of the court denying respondent's previous application has all the characteristics of a final judgment. The application is most closely analogous to a creditor's claim, such as was considered in *De Forrest* v. *Coffey, supra.* At page 453 the court there stated: "The proceeding, while in the nature of an intervention, is treated as substantially an independent action, from the judgment in which any party aggrieved may appeal." The matter was heard by the court with an opportunity for all issues to be presented and the court decided the question of an allowance of a fee upon the merits thereof. There was nothing further to be done, and the matter was fully adjudicated.

A full discussion of the rule of *res judicata* as applied to orders of the court is found in *Tiffany Productions, Inc.,* v. *Superior Court,* 131 Cal. App. 729, 731 et seq. [22 Pac. (2d) 275], and said order denying respondent's application for fees meets the test of a final adjudication as therein set forth. Also see *Sunkler* v. *McKenzie,* 127 Cal. 554 [59 Pac. 982, 78 Am. St. Rep. 86]. The denial of respondent's application comes within the definition of a judgment set forth in section 577 of the Code of Civil Procedure and the effect thereof is conclusive as set forth in subdivision 2 of section 1908 of said code. Whether the entry of a formal order signed by the judge is necessary and essential to an appeal therefrom has no bearing upon a consideration of the order as *res judicata,* and it is not necessary here to decide such a question. "No hard-and-fast definition of 'final' judgment applicable to all situations can be given, since its finality depends somewhat upon the purpose for which and the stand-

point from which it is being considered, and it may be final for one purpose and not for another.'' *Howard* v. *Howard,* 87 Cal. App. 20, 25 [261 Pac. 714], citing Freeman on Judgments, 5th ed., section 27. The trial court therefore erred in concluding that the denial of respondent's previous application was not *res judicata* as to the question of the allowance of his fees.

Respondent argues that the foregoing question is moot because after said order was made denying respondent's application, appellants invoked the right of the trial court to make an allowance to respondent's associate counsel for services said counsel had rendered to the insurance company before the order was made. Appellants state that the same was not an application for an allowance of fees but an application for authority to settle and compromise an asserted claim upon which litigation was threatened. · Respondent also raises the same question as one of estoppel. It is not possible from the record on this appeal to determine what, if any, connection that matter has with the questions here presented. If it were in fact a compromise on a separate claim it could have no possible bearing.

From the foregoing the conclusion is inevitable, first, that the respondent, being the equivalent of a simple creditor, pursued the correct remedy in his original motion, which, as heretofore noted, was denied; second, that the court was without power to grant leave to sue, and hence by reason thereof respondent acquired no added advantage; third, that the action on the debt in the manner and form instituted by respondent is without legal sanction, and hence the judgment entered thereon was void.

For the foregoing reasons the judgment is reversed.

York, P. J., and White, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 12, 1940. Carter, J., voted for a hearing.