THE ASSETS REALIZATION COMPANY

*v.*

DEFREES, BRACE & RITTER.

*Opinion filed February 21, 1907.*

1. LOAN ASSOCIATIONS—*association may contract for attorney's services after Auditor has placed custodian in charge.* The act of the State Auditor in putting a custodian in charge of the assets of a building and loan association does not deprive the association of the power to make a contract for services of attorneys to resist the appointment of a receiver.

2. SAME—*when court may allow fees to attorneys resisting receivership.* In a receivership proceeding against a building and loan association the court has power, where the equities of the case so require, to allow a claim for attorney's fees for services rendered to the association in resisting the receivership, even though the litigation was unsuccessful and the contract of employment was made after the State Auditor had placed a custodian in charge of the assets; and the allowance of such claim is binding upon a purchaser of the assets who has agreed in his bid "to pay in full the general creditors of the estate such claims against the estate as may be allowed by the court."

APPEAL from the Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

In July, 1897, certain stockholders of the Mechanics' and Traders' Savings, Loan and Building Association filed a bill of complaint in the circuit court of Cook county asking for the appointment of a receiver and the winding up of the corporation. While this bill was pending, on July 31, 1897, the State Auditor of Public Accounts took possession of the assets of the association and placed a custodian in charge pursuant to certain provisions of an act of 1897, found as sections 17 to 27, inclusive, Hurd's Statutes of 1905, pages 523-526. The Auditor, under the statutory provisions, convened a meeting of the stockholders on August 9, 1897. The

bill states that there were at this time 15,294 shares of stock outstanding and that 9869 shares were represented in person or by proxy at this meeting. The meeting was adjourned by the stockholders until August 12, 1897, but no notice seems to have been sent to the stockholders of this adjourned meeting. Over 11,000 shares were present or represented at this adjourned meeting. A resolution providing for voluntary liquidation or re-organization being submitted, received affirmative votes of 9394 shares, which is 802 shares less than two-thirds of the stock alleged by the bill to have been then in force but much more than a majority. There appear to have been few, if any, votes cast against this resolution. The stockholders also voted, by a majority vote, to remove the then directors and to elect a new board of directors. For the purpose of avoiding, if possible, any irregularity in the election of these directors, that evening and the next day the old board met with the new board, and by a process of resignation and election the old board elected as directors the identical persons who had been elected at the stockholders' meeting. Shortly after the adjournment of the meeting of August 9 a committee appointed at that meeting to secure counsel employed appellees herein, and at the meeting of the new board of directors on August 12, 1897, upon the recommendation of the committee so appointed, appellees were employed by the board of directors to look after the affairs of the association and protect its interests.

August 13, 1897, at the relation of the State Auditor of Public Accounts, the Attorney General filed a complaint under the provisions of said act of 1897, in which it was alleged that less than two-thirds of the members of the said association having voted in favor of the resolution to reorganize, said association was unable to re-organize or go into voluntary liquidation, and praying that a receiver be appointed to take charge of the property and assets. A temporary receiver was appointed, and afterwards this bill was consolidated with the original bill of complaint filed by cer-

tain of the shareholders. Said board of directors heretofore referred to, through appellees as their counsel, contested the appointment of a receiver. Considerable litigation arose over this and allied questions. The circuit court upheld the legality of the appointment of a receiver and on appeal to the Appellate Court the decision of the lower court was upheld. *Mechanics' and Traders' Savings, Loan and Building Ass. v. People,* 72 Ill. App. 160.

In December, 1897, the court granted permission to the acting board of directors to call a shareholders' meeting for the purpose of attempting to re-organize or go into voluntary liquidation, in accordance with the statute, and the receiver sent out notices calling this meeting. It appears that from the inception of the litigation up to this time neither counsel representing the directors of the association, nor any one for them, were permitted to examine the stock books to ascertain the number of shareholders or number of shares in force. This meeting was called for December 18, 1897, and resulted in a vote of 8004 shares in favor of voluntary liquidation and 204 against, this being less than two-thirds, although more than a majority, of the apparent number of shares in force, and the representatives of the association having no means of determining the actual number of shares in force, the fight to prevent the appointment of a receiver was abandoned, and appellees, by the orders of the board of directors, filed a supplemental answer submitting the entire matter to the court. At the meeting of December 18, 1897, a new board of directors was elected, comprising the previous board elected August 12, with the exception of two or three persons. This newly elected board met December 21 and passed certain resolutions, among others the following:

"*Resolved,* that the circuit court of Cook county be and is hereby requested to allow and pay out of the funds in the hands of the receivers, arising from the proceeds of the property of this association, a reasonable compensation to the attorneys who defended said suit and the expenses necessarily incurred in conducting such defense."

All the fees which are the subject of this litigation were for services claimed to have been rendered between August 12, 1897, and the date of the passage of this last resolution. The same is true as to the expenses herein claimed. The affairs of the association were thereafter in due course closed up by the receiver appointed by the circuit court, and on March 12, 1901, a decree was entered in the consolidated cases directing the receivers to accept a certain bid or proposition made by the Assets Realization Company, appellant, for the purchase of the entire assets of the association. This decree and bid stated, among other things, that appellant was to pay for the assets an amount sufficient, "First, to pay in full the general creditors of the estate such claims against the estate as may be allowed by the court; second, to pay to the stockholders the sum of thirty per cent in cash in addition to the dividends heretofore ordered paid by the receivers, provided, etc.; third, to pay all the expense incident to the closing of the estate and the distribution of the proceeds of sale to us to the parties entitled thereto, including such receivers' fees, if any, and costs of administration, as may hereafter be allowed by the court." In accordance with this decree appellant paid $150,000 in cash for the assets of the association and gave bond that it would carry out the conditions of its bid. Thereafter the appellees herein filed their petition in the original suit in the circuit court asking that they be allowed, as fees in acting for the directors of said loan and building association, as hereinabove set forth, $3725, and also be allowed $533.67 for expenses. Appellant, on leave of court, filed an intervening petition, setting up that appellees were not entitled to have allowed to them out of the proceeds of the estate said fees or expenses. After hearing, the circuit court found in favor of appellees and allowed their claim for fees and disbursements. This order and decree of the circuit court was taken to the Appellate Court for the First District by writ of error and there affirmed. The case was then appealed to this court.

FELSENTHAL, FOREMAN & BECKWITH, for appellant.

JOHN G. CAMPBELL, (DEFREES, BRACE & RITTER, of counsel,) for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

The main contention of appellant is, that the court was without authority to allow the fees and expenses of appellees on the facts shown by the record, the main points of which are set out in the foregoing statement of the case. It is urged that after the appointment of a receiver by the circuit court on August 13, 1897, at which time the court ruled, as a part of its order, that all of the directors and officers and shareholders, their agents and attorneys, were to be restrained and enjoined from in any manner transacting or conducting any business of the association or doing anything by which its assets might, directly or indirectly, be affected, the said association and its board of directors were deprived of all power to enter into a contract or employ attorneys. If this be the law, then the appointment of a temporary receiver, under the act referred to, would deprive an association such as this of all power to incur any liability, even for the purpose of testing the legality of the appointment of the receiver. If the Auditor of Public Accounts, under this law, can arbitrarily, without any supervisory power of the courts, appoint a custodian of a homestead and loan association, he could thereby, if he should so desire, deprive such association of the authority to employ counsel for its own defense and protection. The property of such associations would then be held by very precarious tenure. The Auditor must necessarily exercise this power subject to the control of the courts. Any other construction of this statute would render it liable to great abuse. Appellees were employed by the board of directors, representing more than a majority of the stock and representing practically all of the stockholders that were enough interested to take part in the proceedings, either

directly or by proxy. The litigation in which the fees were claimed to have been earned and the disbursements claimed to have been made was over the question as to the legality of the appointment of a receiver by the circuit court, and whether or not, under the act in question and under the facts, a majority of the shareholders could not re-organize instead of two-thirds being required, as held by the trial court and afterwards by the Appellate Court. When the Appellate Court decided this contention,—that a majority, only, was required,—to be incorrect, all further litigation on behalf of said corporation by appellees ceased. We do not think there is any good ground for contending that the appellees represented a faction, only, of the shareholders. From this record we are of the opinion that they represented the old and new board of directors, and substantially all of the shareholders who took any active interest in the association.

No general rule can be laid down that will apply to the allowance of fees in cases of this kind. The facts and circumstances of each case must be especially looked into and examined to render a just and equitable decision. We are fully aware if factions of the shareholders or of the board of directors can feel that they can bring contests over assets in litigation of this character without incurring any pecuniary hazards, that litigation without merit will be greatly encouraged; still, the representatives of corporations whose very existence is attacked should be afforded reasonable means for resisting such attack, if the facts appear to justify such resistance. "Public policy requires that they should be protected to this extent, but no farther, and a premium should not be held out for captious and vexatious contests at the expense of the fund which the court is under the highest obligation to preserve, as far as possible, to meet the just debts and liabilities of the corporation." *Barnes* v. *Newcomb,* 89 N. Y. 108.

No question is raised as to the amount of the fees or the amount of expenses. The whole controversy turns on the

right of the court to allow for any fees or any expenses, on the facts as set forth. At the time the services were rendered and the expenses incurred appellant had no interest in the proceedings or the assets of the association. The liability, if any, to appellees had been incurred at that time. Under its bid appellant agreed "to pay in full the general creditors of the estate such claims against the estate as may be allowed by the court."

On the record before us, in the light of the authorities, we find no reversible error. The judgment of the Appellate Court will accordingly be affirmed.

*Judgment affirmed.*