PROVOSTY, J.
The defendant corporation has taken a suspensive appeal from an order appointing a receiver, and has perfected the appeal by giving bond; but, the receiver having taken charge of all of its property, it is without funds with which to pay for the transcript of appeal in order to file it in this court. It has applied in vain to the receiver to pay for this manuscript, and, to the trial judge to compel him to do so, ana now applies to this court for a mandamus in the premises.
Moreover, the learned trial judge has ruled that, notwithstanding the suspensive character of said appeal, the receiver may go. on and operate the business as a going concern, and the corporation also now applies to this court for a writ of prohibition against this carrying on of the business.
[1] As reasons for thus depriving the corporation of the money necessary for paying for the transcript of its appeal and the filing of it in this court, it is said that the appeal has been taken in reality, not by the corporation, but by the president and one member of the board of directors, who in the application for the receivership are the parties charged with the mismanagement of the affairs of the company.
The said- two persons and the plaintiff in the receivership proceedings constituted the board of directors of the corporation; so that the said appeal is being prosecuted by authority of a majority of the board of directors and the president of the corporation; and the sole party opposing is one member of the board of directors, who is the plaintiff in the receivership proceedings.
Again, it is said that, if said money is furnished and the judgment appealed from is affirmed, the corporation will have to proceed against the president individually for reimbursement, and that said president may perhaps be found not to have property sufficient to answer for said amount, $150, and thus the same might be lost to the corporation.
■ The answer is that the money will not be furnished to the president individually, but to the corporation; so that the president individually will not be liable for same.
Again it is said that the corporation is poor, and needs all its cash for carrying on its business.
The answer to that is that the most important and pressing business of the corporation just now is to protect itself against this appointment of a receiver, which takes its business out of its hands, and puts it in the hands of strangers, who may run it into the ground.
Next, it is fancifully said that this letting the officers of the corporation have this money would not be an administrative act on the part of the receiver, and that, moreover, the suspensive appeal deprives him of all power to draw a check for that purpose, and that the putting of this money to this use would be a partial distribution of the assets of the corporation.
The answer is that there is no higher law than that of self-defense, and that therefore there can be no higher duty on the part of the receiver than to furnish the corporation with this money with which to defend itself, and that this is not a distribution of assets.
*437 [2] Passing to the question of the effect of the suspensive appeal, the law on the subject is section 4 of Act. 159, p. 312, of 1898, which reads:
“Such an appeal when perfected shall have the effect of suspending the functions of such receiver, except to perform such administrative acts as may be necessary for the preservation of the property” of the corporation.
The question resolves itself, therefore, into whether the going on with the business in this case is merely to “perform such administrative acts as may be necessary for the preservation of the property.”
The corporation was organized for doing a wholesale drug business. A feature of the plan was to sell preferred stock to retail, druggists, who would be expected to be prompted by self-interest to give a preference to this corporation, in which they were stockholders, in making their purchases. Another feature was that the preferred stock had no voice in the management of the corporation.
We may mention that one half of the common stock was held by plaintiff and the other half by the president of the corporation and the third director, the latter holding only one share.
It is said that the business of the corporation is mainly dependent upon these preferred stockholders, and that therefore the chief asset of the corporation is “its line of trade, in short, its good will,” and that, inasmuch as this good will is its property, and this' good will can be preserved only by carrying on the business as usual, the carrying on of the business.is “to perform such administrative acts as may be necessary for the preservation of the property.”
Nothing can be truer than that the good will of a business is a part of its assets, and that to preserve this good will the business must go on; and nothing can be truer, also, than that the Legislature knew this perfectly well when it enacted said law, which provides that a suspensive appeal “shall have the effect of suspending the functions of the re-. ceiver.” If the suspensive appeal did not suspend the carrying on of the business, we do not see what would be the thing that it would suspend. There is nothing else for it to suspend.
In the case of Blaise v. Security Brewing Co., 124 La. 979, 50 South. 816, what was decided was that the suspensive appeal did not operate to suspend the delivery of the property of the corporation to the receiver or the making of an inventory of it.
It is therefore ordered, adjudged, and decreed that the writs of mandamus and prohibition issue herein as prayed.