## ESAREY v. PIERSON, RECEIVER.

[No. 11,374.   Filed October 11, 1923.   Rehearing denied June 4, 1924.   Transfer denied January 8, 1926.]

1. CORPORATIONS.—*Whether expenses of officers of a corporation in resisting an attack on its corporate existence, such as the appointment of receiver, should be paid out of the corporate funds is within sound discretion of the court.*—It is the duty of the officers of a corporation, as trustees of all interested therein, to take the necessary steps to protect its corporate existence, such as the appointment of a receiver, and to repel an attack thereon which they regard as unfounded, and it is proper that reasonable expenses incurred by them for that purpose be allowed them, but the question of whether an allowance shall be made, or, if made, what should be allowed, is within the sound legal discretion of the court to which it is addressed.   p. 112.

2. CORPORATIONS.—*Disallowance of claim for money loaned to a corporation to enable it to appeal from order appointing receiver held not necessarily error, although claimant loaned the money in good faith for the benefit of the company.*—Where a receiver was appointed for a corporation on the theory that it was being mismanaged and that, because of such mismanagement, it was in imminent danger of insolvency, the disallowance of a claim against the receiver for money loaned to the corporation to enable it to appeal from the order appointing the receiver was not error, as the court may have been of the opinion that the appeal from the order was not for the benefit of the corporation but for the sole benefit of those in charge thereof.   p. 114.

From Marion Superior Court (A 1,746); *Solon J. Carter*, Judge.

Claim by Solomon H. Esarey against the receiver for the Standard Electric Manufacturing Company for money loaned to the corporation after the appointment of the receiver.   From an order disallowing the claim, the claimant appeals.   *Affirmed.*   By the second division.

*Ward H. Watson*, for appellant.
*Joseph Collier*, for appellee.

McMAHAN, C. J.—January 25, 1918, on complaint of a stockholder and without notice, a receiver was appointed for the Standard Electric Manufacturing Company. A few days later, the defendant appeared and filed answer. The court, after a hearing, refused to set aside the appointment. After the expiration of the ten days allowed for appealing, a number of stockholders and the directors of the company held a meeting and employed counsel and authorized them to take such steps as were deemed necessary to have the receiver discharged. February 23, a motion for a new trial was filed and thereafter overruled. Conferences were then held with the court with the idea of raising sufficient money to pay the debts of the company and reorganizing the board of directors, so as to eliminate from its management and control the then president and manager, who was also a director, and who held about three-fourths of the outstanding capital stock.

Through the efforts of the counsel so employed, parties were found who were willing to advance the necessary money to pay the debts. The then president resigned as president and director and one of the lawyers so employed by the company was elected director and president. The court again refused to discharge the receiver, after which counsel who had been elected president resigned, and the former president was again elected as a director and president, and, on July 13, 1918, the board of directors authorized an appeal from the order appointing the receiver, and, in order to raise the money for that purpose, executed the company's note to appellant and he advanced them thereon $2,160.43, which was used to pay the attorneys for their services and the expenses of the appeal. When the money was so advanced by appellant, and when all the property of the company was in the hands of the re-

ceiver, the company executed a chattel mortgage to appellant to secure the payment of the money so advanced, and which was advanced by appellant in good faith and under the belief that he was secure. When the receiver was appointed, the debts of the company were about $10,000 and the property which it owned at that time was worth $40,000. In June, 1918, the receiver procured an order authorizing him to sell such property, and, after advertising it for sale, had an offer of $40,000 for it. The attorneys perfecting and prosecuting the appeal were the same attorneys who acted for the company in attempting to perfect the reorganization of the company. For their entire services, they were paid $1,500, that being the reasonable value of such services. Pending the appeal, the sale of the property, on the application of the company, was stayed.

When the appeal was dismissed in 1921, the property had depreciated in value and was sold by the receiver for $16,000. After the sale of the property, the receiver filed a report and set out a schedule of the creditors and the priority in which he recommended they be paid. He reported certain claims filed with him which he had disallowed, appellant's being one that he reported should not be allowed. Of the claims which the receiver reported as preferred were two for machinery purchased on conditional sale contracts aggregating $8,664.75. Then came court costs, receivers' expenses, and claims which we infer are for debts contracted by the receiver aggregating more than $7,000. Next in priority were claims aggregating $2,967.07 contracted prior to the receivership. The total amount of claims reported as allowed and entitled to payment was $17,725.50. Claims disallowed, including appellant's, totaled $7,416.40. The court approved the report, and after making an allowance to the receiver and his attorney directed that a dividend of twenty-five per

cent. be paid on the general debt contracted before receivership and disallowed appellant's claim.

Appellant contends that the decision of the court disallowing his claim is not sustained by sufficient evidence and is contrary to law. In support of this contention, appellant says it is not only the duty of a corporation, in good faith, to resist the appointment of a receiver, but that, after a receiver has been appointed, it has the right and power to charge the corporation's assets with the reasonable expenses of necessary litigation to reclaim its property, and that, even though it fails in its contest, it may recover its costs and attorneys' fees as a charge against the funds in the hands of the receiver.

In *Dolph* v. *Cincinnati, etc., R. Co.* (1913), 56 Ind. App. 137, after the appointment of a receiver for a railroad company, the control and management of the road was taken from the receiver and turned over to a committee selected by the bondholders, stockholders and unsecured creditors. The road was operated by the committee for two years, and during that time, Dolph had been employed by the committee to render legal services. Later, another receiver was appointed and Dolph continued to act as attorney for the receiver. It was held that his claim for services rendered for the reorganization committee should be given priority and paid before distribution to the bondholders. This was on the theory that the committee was a trustee acting for and on behalf of the bondholders, stockholders and general creditors and had the right to employ counsel to assist in the management of the trust estate and to charge such estate with a lien.

It is the duty of the officers of a corporation as trustees of all interested therein to take the necessary steps to protect its corporate existence, and to repel an

1.    attack which they regard as unfounded, and it is proper that reasonable expenses incurred by

them for that purpose be allowed them. But it is in the sound legal discretion of the court administering the fund, to determine up to what stage opposition is proper and what is a reasonable sum to be allowed or whether any allowance should be made. The claim of the officers of a corporation, or of attorneys employed by them, to be paid out of the funds in the hands of the receiver, is not an absolute right. It is a matter addressed to the sound discretion of the court. *Barnes* v. *Newcomb* (1882), 89 N. Y. 108; *Assets Realization Co.* v. *Defrees* (1907), 225 Ill. 508, 80 N. E. 263; *Thomas* v. *Knights of Maccabees* (1915), 85 Wash. 665, 149 Pac. 7, L. R. A. 1916A 750, Ann. Cas. 1917B 804.

When appellant loaned the money, the debts and liabilities of the company were about $10,000 plus the costs and expenses of the receivership. The value of the property owned by the company at that time, and which we infer was personal property, was $40,000. It is quite evident that appellant did not advance the money to the company upon the theory that he would be entitled to a preferred claim, as he took a mortgage on the property, then in the hands of the receiver, doubtless considering himself well secured because of the fact that, at that time, the property so mortgaged to him was worth much more than the debts of the company. Had not the sale of the property been stayed on application of the company pending the appeal, appellant would have been well secured. Three years later, when the appeal was disposed of, the value of the property had depreciated so that when sold it brought but $16,000, which was insufficient to pay the claims filed with the receiver and allowed by the court.

The court appointed the receiver upon the theory that the business affairs of the company were being mismanaged by the then president, to whom $75,000 of

the capital stock had been issued for applications for patents which, in the course of time, turned out to be of but little or no value, and because of such mismanagement, the company was in great danger of insolvency. The good faith of the defendant is an important matter for the consideration of the court in determining whether anything should be allowed a defendant for resisting the appointment of a receiver. The court in disallowing appellant's claim may have been of the opinion that the resignation of the president and the election of his attorney as president was not made for the purpose of changing the management of the company. That the resignation of the attorney as president and the re-election of the former president and the appeal which followed were not for the benefit of the company, but were solely for the benefit of the president whose conduct was not satisfactory to the court, and were not in good faith. Without entering into a discussion of the many things that may have influenced the court, it must be remembered that appellant in loaning the money to the company was a mere volunteer who loaned the money in the belief that he was amply secured by his mortgage. It may be conceded that appellant loaned the money to the company in good faith, in the belief that he was secure, and that counsel in prosecuting the appeal did so in good faith, but it does not follow that the board of directors and president of the corporation were acting in good faith.

The action of the court in disallowing appellant's claim is equivalent to a finding that the corporation and its officers knew that the business of the corporation was being mismanaged and that it was in imminent danger of insolvency and that the employment of counsel was not for the benefit of the corporation, but was for the sole benefit of the president and manager, who, by reason of his large holding of

stock, was in control of the corporation. As was said by the court in *People* v. *Commercial, etc., Ins. Co.* (1896), 148 N. Y. 563: "In our opinion, it would be contrary both to equity and to sound public policy to permit counsel fees out of the fund to be awarded to the applicant on the theory that counsel do not hold their rights under the corporation which employs them, but independently of the corporation, or that they can assert a right unaffected by the fraud or bad faith of the corporation in interposing a defense. There is little danger that this rule will disable corporations assailed from securing in proper cases the services of competent counsel. If any embarrassment arises it will be in cases of dishonest attempts to keep corporations afoot to the prejudice of honest dealing. If it tends to this result the public will suffer no harm."

Our conclusion is that the court did not err in refusing to allow appellant's claim. Judgment affirmed.