CYRUS E. MAGNUSSON, COMMISSIONER OF INSURANCE, v. AMERICAN ALLIED INSURANCE COMPANY. AMERICAN ALLIED INSURANCE COMPANY v. CYRUS E. MAGNUSSON AND OTHERS. DAVID K. WENDEL, APPELLANT.

164 N. W. (2d) 867.

January 24, 1969—No. 41040.

*Firestone, Fink, Krawetz, Miley, Maas & Noonan, William W. Fink, O'Neill, Burke & O'Neill,* and *Patrick H. O'Neill,* for appellant.

*Briggs & Morgan, David C. Forsberg,* and *Samuel L. Hanson,* for respondent receiver.

SHERAN, JUSTICE.

Appeal from an order of the district court entered in receivership proceedings. The receiver also seeks review of a portion of the order pursuant to Minn. St. 605.065. We treat the order as appealable.[1]

On August 4, 1965, the Ramsey County District Court, in proceedings instituted by the commissioner of insurance of the State of Minnesota, determined that the American Allied Insurance Company (hereafter Allied) was insolvent and appointed Homer A. Bonhiver receiver to take possession of its assets and settle its affairs. By order of the court, corporate operations had been suspended from June 10, 1965, when the action was commenced, until August 4, 1965, when the order appointing the receiver issued.

David K. Wendel, an attorney in good standing at the bar of this state, represented Allied in the proceedings which culminated in the appointment of the receiver. He filed a claim in the amount of approximately $18,000 for his fees, asserting that he was entitled to payment of this amount as an expense of administration. The receiver resisted this claim and counterclaimed for the recovery of approximately $33,000 on the theory that this amount, paid by Allied to Mr. Wendel within 3 months before the commencement of the receivership proceedings as compensation for services not related to the receivership, constituted a preference.

---

[1] Rule 103.03(h), Rules of Civil Appellate Procedure. See, Cunningham, *Appealable Orders in Minnesota,* 37 Minn. L. Rev. 309, 353, 355.

The issues were decided on affidavits and on oral testimony taken February 23, 1967. On April 28, 1967, the trial court denied both claims. The reasonableness of Mr. Wendel's fees and his good faith in performance are acknowledged.

We have these issues for decision: (1) Did the trial court err in disallowing as an expense of administration Mr. Wendel's claim for attorney's fees incurred in resisting the receivership at the request of the corporation's officers and directors? (2) Was it error to reject the receiver's claim that sums paid to Mr. Wendel as attorney's fees during the 3-month period preceding June 10, 1965, constituted a recoverable preference?

■ The trial court ruled that Mr. Wendel had failed to sustain the burden of proving that the officers and directors of Allied acted in good faith in resisting the receivership and, this being the case, the fees were not to be paid as an expense of administration even though Mr. Wendel himself was faultless. We accept the following statement appearing in O'Malley v. Continental Life Ins. Co. 343 Mo. 382, 394, 121 S. W. (2d) 834, 840, as a correct statement of the law: [2]

"* * * [A]ttorneys employed by the directors of an insurance company to defend a dissolution suit have no independent right to a preferred claim for compensation, in the liquidation of its assets if it is insolvent, but an allowance for such services can only be made as the necessary and proper expenses of such directors as trustees; and if they are incurred without reasonable grounds and probable cause for honest belief and sincere conviction that the company is solvent and that the continuance of its business is for the best interest of its policyholders, stockholders and creditors * * * then such attorneys' fees must be paid by the directors who incurred them out of their own funds instead of out of the funds they held for the benefit of such others."

We recognize that application of this rule in a situation where the

---

[2] See, also, People v. Commercial Alliance Life Ins. Co. 148 N. Y. 563, 42 N. E. 1044; McConnell v. All-Coverage Ins. Exch. 229 Cal. App. (2d) 735, 40 Cal. Rptr. 587; Watson v. Johnson, 174 Wash. 12, 24 P. (2d) 592, 89 A. L. R. 1527; 2 Clark, Receivers (3 ed.) § 642(b); 75 C. J. S., Receivers, § 293d; 45 Am. Jur., Receivers, § 279.

attorney has acted in good faith, though his employers have not, creates a hardship so far as he is concerned in the sense that his time and energy may be expended for the corporation without compensation from it. His cause of action against the officers and directors who employed him may be a worthless remedy.

In accepting the duty to represent a corporation in resisting a receivership, an attorney is compelled to take the chance of working for nothing if, in the end, the men who employ him prove financially irresponsible and he is unable to prove their good faith in retaining him. Only if it is ultimately decided that the officers and directors have acted in good faith is he entitled to compensation for his services as an expense of administration from corporate funds.

The law is solicitous for those who oppose efforts to terminate a corporation's life if there is an adequate basis for such opposition. But, because the law must also protect creditors, we impose the requirement of good faith on the part of the employing officers and directors. Expensive and fruitless resistance and delay causing further dissipation of the corporate assets must not be encouraged by litigation which the officers and directors know or should know to be useless. The attorney employed by the officers and directors has at least some opportunity to evaluate the good faith of the officers and directors in resisting the action. The general creditors have none. Balancing the equities as between the retained attorney and those to whom the corporate assets will be distributed in the receivership proceedings, we grant the preference to the attorney if, but only if, the good faith of his employers is first proved.

Without seriously contesting that the rule as stated is generally applied, Mr. Wendel contends that the good faith of the officers and directors was established in this case principally because Philip H. Graff, a certified public accountant, testified that the company was solvent on April 29, 1965, when Wendel was retained to represent it in matters involving the conduct of its corporate affairs. As of March 1, 1965, he testified, the insurance company had a surplus of approximately $1,200,000. Shortly before the receivership proceedings were instituted, he noted, the corporation received a certificate of authority to continue in business for the year commencing June 1, 1965.

If the facts known by the officers and directors were as Mr. Graff considered them to be, their good faith in resisting the receivership would be manifest. But in the present situation, the opinion of Mr. Graff as to the solvency of the corporation affords no support whatever for a finding of good faith on the part of the corporate officers and directors. Although he conducted two examinations of Allied, one with respect to its financial situation as of August 31, 1964, and the other relative to its financial situation as of December 31 of that year, he made no attempt whatever to secure independent verification of the facts set forth in the company's books and records. His audits were not certified.

The actual facts existent during the period in question as found in the district court in the receivership proceedings were these: The principal asset of Allied during the critical period consisted of stock of Allied Realty of St. Paul, Inc. (hereafter called Realty) listed on the books of Allied as being worth approximately $2,500,000, but worth, in fact, approximately $800,000. The officers and directors of these two corporations were identical. The principal asset of Realty consisted of worthless stock and certificates issued by the Bell Casualty Company of Chicago, Illinois, and the Bell Mutual Casualty Company, also of Chicago. The home office building of Allied, listed on its books at a value of $600,000, was actually worth considerably less than that. Other real estate included in the assets of Realty was of doubtful value and ownership. If these facts as found by the district court are accepted, we must conclude that Graff's estimate of the solvency of the corporation was based on false information supplied by the officers and directors who had employed Mr. Wendel.

The evidence also showed that Realty acquired stock issued by the Bell Casualty Company and the Bell Mutual Casualty Company, both of Chicago, from the men who owned and directed both Allied and Realty. In addition, Allied's books failed to disclose that its officers and directors had executed and delivered a mortgage with respect to the home office building to secure the repayment of $250,000.

In the context of the present record, we simply cannot accept the claim that these officers and directors were acting in the justifiable belief that the reasonable worth and value of the corporation's assets ex-

ceeded its liabilities during the time when the services of Mr. Wendel were expended in resisting the receivership. The fact that they were acquitted in criminal proceedings [3] does not influence our views in this respect.

■ In substance and effect, the receivership proceedings here were carried out pursuant to Minn. St. 1965, § 60.875.[4] This being so, creditor preferences can be set aside at the instance of the court-appointed re-

---

[3] United States v. Kitzer (D. N. D.) No. 445 Criminal, June 23, 1967.

[4] The pertinent provisions of Minn. St. 1965, § 60.875, were: "Subd. 22. The commissioner shall commence any proceeding under this section by an application to the district court of the county in which the principal office of the insurer involved is located, if a domestic insurer, * * * for an order directing such insurer to show cause why the commissioner should not have the relief prayed for. On the return of such order to show cause, and after a full hearing, which shall be held by the court without delay, such court shall either deny the application or grant the same together with such other relief as the nature of the case and the interests of policyholders, creditors, stockholders, members, or the public may require."

"Subd. 6. The commissioner may apply * * * for an order directing him to liquidate the business of a domestic insurer upon one or more of the grounds specified in subdivision 3 * * *."

Among the grounds specified in subd. 3 are that the insurer:

"(a) Is insolvent,

\* \* \* \* \*

"(e) Is found, after an examination, to be in such condition that its further transaction of business will be hazardous to its policyholders, or to its creditors, or to the public."

"Subd. 23. The order to show cause and the papers upon which the same is made in any proceeding under this section shall be served upon the insurer named in such order * * *."

"Subd. 24. When it appears by the application for the order to show cause referred to in subdivision 23 that the commissioner is entitled to the relief demanded, a temporary injunction may be granted restraining the insurer named in the application, its officers, directors, stockholders, members, trustees, agents, servants, employees, policyholders, attorneys, managers, and all other persons, from the transaction of its business or the waste or disposition of its property until the further order of the court."

"Subd. 47. No order, judgment, or decree providing * * * for the appointment of a temporary or permanent receiver * * * shall be made or

ceiver as provided by Minn. St. 1965, § 60.875(31, 33). We have reached this conclusion notwithstanding the fact that the petition on which the district court acted referred as a basis for relief to the provisions of Minn. St. 1965, § 60.12,[5] a statute enacted in 1895 (G. L. 1895, c. 175, § 7), which, if not superseded or supplemented by § 60.875, which was adopted in 1943 (L. 1943, c. 571), cannot support proceedings to set aside creditor preferences, there being no provision in the 1895 enactment countering the general rule, applied in the absence of statute, that debtors are free to give a creditor preference if they choose to do so.[6] The trial court treated the petition as one filed pursuant to § 60.875 when it authorized the receivership to institute proceedings to void creditor preference, formulating its order in the language of § 60.875(31, 33).[7] It had jurisdiction to do so because the petition was filed by a party (the commissioner of insurance) authorized to proceed under § 60.875 and (except for the reference to § 60.12) the petition met the essential require-

---

granted otherwise than upon the petition of the commissioner as provided in this section * * *."

[5] Minn. St. 1965, § 60.12, provided in part: "* * * If, upon examination, the commissioner is of the opinion that any domestic insurance company is insolvent * * * or that its condition is such as to render its further proceedings hazardous to the public or to its policyholders, he shall apply to the judge of any district court to issue an injunction restraining it, in whole or in part, from further proceeding with its business."

[6] Farmers Co-op. Assn. of Bertha v. Kotz, 222 Minn. 153, 23 N. W. (2d) 576.

[7] "The receiver is directed to investigate transfers of and liens upon the property of the defendant and he is authorized and directed to take all necessary steps to avoid any transfer of or lien upon the property of the defendant which any creditor or stockholder might have avoided and recover the property so transferred or its value from the person to whom it was transferred. He is authorized to investigate transfers of or liens upon property made or created within three months prior to June 10, 1965, the date of the Order to Show Cause herein. If such investigation discloses that any such transfer was made, or lien created, with intent to give any creditor, or of enabling him to obtain, a greater percentage of his debt than any other creditor of the same class, which was accepted by such creditor having reasonable cause to believe that such a preference would occur, the receiver is directed to take such action as may be necessary to avoid such preference."

ments of the latter enactment.[8] No objection has ever been made to this order in these proceedings.

In resolving this issue, the trial court treated the case as one where preference could be voided, but concluded that the receiver had failed to establish that Wendel knew actually or constructively that he was being preferred when he was paid for services rendered by him as a claims attorney for Allied before June 10, 1965. Our statute makes such knowledge on the part of the recipient of the payment a condition of recovery by the receiver. Except for two payments, one in the amount of approximately $11,000 on May 25, 1965, and one in the amount of approximately $5,000 on June 9, 1965, it is clear to us that the trial court's determination was correct. As to these other payments, all made before May 25, bills were submitted by Mr. Wendel to the corporation for his work on a particular claim file and checks received in payment were negotiated in the usual course, following the same routine as had been in force between Mr. Wendel and the insurance company for the 4-year period during which he had acted as its claims attorney.

But we have had serious difficulty in reconciling the facts pertaining to the payments of $11,000 and $5,000 with the theory that Mr. Wendel was unaware that he was being preferred. In both of these situations, bills were rendered before the claim files involved were closed, a departure from the long-established practice. In both instances, he had the checks received in payment promptly certified. In the ordinary situation, these facts would be very persuasive evidence of knowledge on the part of the recipient that he was being preferred.[9] In some situations, at least, these

---

[8] See footnote 4, *supra*. The petition filed by Cyrus E. Magnusson, commissioner of insurance of the State of Minnesota, on June 10, 1965, asked for liquidation of American Allied Insurance Company on the grounds that the company was insolvent and in such condition that further transaction of its business would be hazardous to its policyholders, its creditors, and the public. The petition asked for a temporary injunction restraining Allied, its officers, directors, agents, employees, policyholders, attorneys, and all other persons from the transacting of its business or waste or disposition of its property until the further order of the court.

[9] Irving Trust Co. v. Textile Banking Co. (S. D. N. Y.) 3 F. Supp. 816, affirmed (2 Cir.) 65 F. (2d) 1018.

facts could establish such knowledge as a matter of law. We have been persuaded in this case, however, that extraordinary circumstances exist giving support to the trial court's conclusion that the receiver failed to sustain its burden of proving that Wendel had "reasonable cause to believe that such a preference [would] occur" with respect to these items.[10] For one thing, apart from Wendel's claim for legal services, the corporation was paying all bills as submitted up to June 10, 1965, when the operations were suspended. During the period from April 29, 1965, up to and including the time that these payments were received, Mr. Wendel was devoting all of his time and effort to the representation of Allied in its corporate affairs. To this extent, he was prevented from carrying on from day to day those aspects of his professional affairs which would have produced a steady flow of income in the usual routine of his business. This may have accounted for the fact that the statements submitted to the corporation in response to which the disputed sums were paid were, in a sense, premature. It is true that Mr. Wendel had been in close touch with corporate management for a period of almost a month before these contested payments were made to him and that this proximity to the facts of corporate life suggest strongly that he knew the trouble Allied was in. But his assessment of the situation could have been inaccurate, bearing in mind that before April 29, 1965, his legal practice was devoted almost exclusively to the defense of liability claims made against Allied policyholders. He professed no particular skill in the field of corporate finance. He had other claims for services rendered for the corporation in defending liability claims totaling over $45,000; in so far as the record shows, no attempt was made to secure payment on account of these claims before the insolvency and, as to this sum, Mr. Wendel will recover, if at all, as a general creditor. Finally, the fact that Mr. Wendel served as the corporation attorney in resisting the receivership for almost 3 months after the disputed payments were made to him without compensation from the corporation (either paid or secured as an expense of administration) suggests in a rather practical way that Mr. Wendel thought—or, at

---

[10] See, Minn. St. 1965, § 60.875, subd. 31; Elliotte v. American Sav. Bank & Trust Co. (6 Cir.) 18 F. (2d) 460; In re Star Spring Bed Co. (D. N. J.) 257 F. 176.

least, hoped—during this period that the corporate assets would prove sufficient to pay all of the creditors of the corporation, including himself, in full. It is these considerations which, upon careful reflection, have persuaded us to accept the trial court's determination that the burden of proof with respect to the alleged preferences was not fulfilled.

We are not called upon and do not decide whether Mr. Wendel can assert his claim for $18,000, disallowed as an expense of the administration, as a general creditor. The question of whether the $45,000 claim by Mr. Wendel as a general creditor on account of legal services rendered for the corporation but unrelated to the insolvency proceedings is allowable in the amount claimed also remains to be decided.

Affirmed and remanded.