THE PEOPLE *ex rel.* JAMES W. SCHACHT, Acting Director of Insurance as Rehabilitator for Main Insurance Company, Plaintiff-Appellee, *v.* MAIN INSURANCE COMPANY *et al.*, Defendants-Appellants.

First District (4th Division)   No. 82—2281

Opinion filed April 21, 1983.

---

Howard E. Gilbert, Michael D. Richman, and Herman, Tannebaum, Levine & Gilbert, all of Chicago, for appellants.

Jeremiah Marsh, Michael Schneiderman, Michael M. Conway, and Mary K. Butler, all of Hopkins & Sutter, of Chicago, for appellee.

PRESIDING JUSTICE ROMITI delivered the opinion of the court:

In 1977, the Illinois Director of Insurance took over the assets of Main Insurance Company under a court order of rehabilitation. In 1980 the Director filed for liquidation. Attorneys who had acted for Main's shareholder were appointed by the court to defend Main. After trial the trial court initially denied the petition for liquidation; later it reversed itself and granted the petition. It also held that it had no discretion to award attorney fees to the attorneys defending Main and

refused to provide for a transcript of the report of proceedings. Thus very little of the record is before the court. On appeal Main contends that:

(1) the trial court erred in holding it had no power to award attorney fees;

(2) the trial court erred in admitting certain exhibits into evidence as they did not qualify as business records;

(3) section 190(5) of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 802(5)), if interpreted to require the introduction of any exhibit attached to the complaint, however irrelevant or otherwise improper, is unconstitutional;

(4) the trial court erred in admitting opinion evidence on the claims reserves of Main without sufficient foundation of fact.

The Director of Insurance on appeal contends:

(1) in light of the Illinois Insurance Code, the court had no discretion to award attorney fees to attorneys not appointed by the Director;

(2) in the absence of a report of proceedings, the appellate court must presume that the judgment was supported by the evidence;

(3) the exhibits were properly admitted as business records and, as to one of the exhibits, as an exhibit attached to the complaint;

(4) the opinion evidence was proper under *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E 2d 1322.

■ We hold that the trial court erred in holding it had no discretion to award attorney fees. We further note that the other issues raised are serious in nature, particularly in light of the fact that the trial court initially denied the petition for liquidation and *Wilson v. Clark* was not applicable to the trial of this case. These issues, however, are not reviewable in the absence of a transcript. In light of the strong public policy involved here, we remand this case to the trial court and order it to make some provision for a sufficient report of proceedings so that the case may be properly reviewed by this court.

Main Insurance Company is an Illinois corporation organized under the Illinois Insurance Code to insure property and casualty risks. While its principal place of business is in Chicago, Illinois, it does business in other States as well as Illinois.

On January 18, 1977, the Director of Insurance filed a complaint for rehabilitation of Main under section 188 of the Illinois Insurance Code (Ill. Rev. Stat. 1975, ch. 73, par. 800), which provides for rehabilitation where consented to by a majority of the directors of the company. (Here the directors unanimously agreed to rehabilitation.) Unlike liquidation, rehabilitation has as its purpose the preservation,

whenever possible, of the business of an insurance company threatened with insolvency. (*In re Allcity Insurance Co.* (1979), 66 App. Div. 2d 531, 413 N.Y.S.2d 929.) On January 19, 1977, the trial court entered an order of rehabilitation empowering the Director as Rehabilitator to immediately take possession of all of the property, business and affairs of Main. Main was enjoined from transacting any company business or disposing of any company property or assets without the consent of the Director or until further notice of the court. The law firm of Arvey, Hodes, Costello & Burman, which had previously appeared for Main, was appointed by the Rehabilitator to aid in conducting the rehabilitation of the company.

In November 1980, the Director filed a petition that Main be found insolvent and liquidated. Main, by its attorneys, the Arvey firm, filed a cross-petition seeking an order that the rehabilitation be terminated and Main be returned to its former management. Main further contended that in light of the court approved plan of rehabilitation, the filing of a liquidation action was improper and premature.

In response, the Director filed a separate action on February 6, 1981, again seeking liquidation. On February 25, 1981, the Arvey law firm filed a petition to clarify its status as attorneys in representing Main and resisting the Director's petition. Over the Director's objection, the court ruled that the Arvey firm had the right to represent Main in connection with the hearings on the pending petition for liquidation and Main's cross-petition and to be paid reasonable attorney fees from the Main estate in connection with its opposition to the petition for liquidation. The Director has not appealed from this order.

On March 9, 1981, Mainway Financial Corporation, represented by the law firm of Herman, Tannebaum, Levine and Gilbert, was given leave to intervene in the liquidation proceedings. Mainway is the sole stockholder of Main.

On May 6, 1981, the Arvey firm sought leave to withdraw as counsel for Main on the grounds that while its representation had initially been necessary to afford due process, Main's interests and Mainway's appeared to be identical so that the defense could be continued by Mainway. The court granted the motion on the condition that the Herman firm appear instanter as counsel for Main. It also, over the Director's objection, awarded attorney fees to the Arvey firm, such fees being treated as a "reasonable and necessary expense in the administration of the estate." Again the Director has not appealed from the award.

The case was tried and the trial concluded in late summer 1981. On October 20, 1981, the trial court entered an order denying plain-

tiff's petition for liquidation. On June 22, 1982, the trial court vacated its original ruling and found Main to be insolvent. Apparently this reversal was based on a decision by the trial court to accept as proper evidence and rely upon certain opinion evidence it had previously rejected. The order of liquidation, however, was stayed without bond pending appeal. The trial court denied the Herman firm's petition for attorney fees, holding it was without discretion to award attorney fees.

I

Because the trial court found it had no power to award attorney fees the issue before this court is not whether such fees should have been awarded but merely whether the trial court could have awarded such fees and erred in refusing to consider the motion. It is well established that as a general rule where an application has been made for the appointment of a receiver for a corporation, attorney fees and expenses, if incurred in good faith, may become a valid claim against the receiver, such claim being addressed to the sound discretion of the trial court. *Roddis v. Strong* (1967), 250 Cal. App. 2d 304, 58 Cal. Rptr. 530; *Anderson v. Great Republic Life Insurance Co.* (1940), 41 Cal. App. 2d 181, 106 P.2d 75; *Masterton v. Lenox Realty Co.* (1940), 127 Conn. 35, 15 A.2d 15; *Esarey v. Pierson* (1923), 84 Ind. App. 109, 141 N.E. 87; *O'Malley v. Continental Life Insurance Co.* (1938), 343 Mo. 382, 121 S.W.2d 834; *In re People by Beha* (1930), 136 Misc. 715, 242 N.Y.S. 100; *People v. Commercial Alliance Life Insurance Co.* (1896), 148 N.Y. 563, 42 N.E. 1044; *Barnes v. Newcomb* (1882), 89 N.Y. 108; *Watson v. Johnson* (1933), 174 Wash. 12, 24 P.2d 592; *Sims v. Homeseekers Fire Insurance Co.* (1938), 120 W. Va. 459, 199 S.E. 69; 19A Appleman Insurance Law & Practice sec. 10712 (1982).

Such fees are in the nature of expenses incurred by the corporation and its directors in the protection and preservation of the trust which they represent. (*Watson v. Johnson* (1933), 174 Wash. 12, 24 P.2d 592; *People v. Commercial Alliance Life Insurance Co.* (1896), 148 N.Y. 563, 42 N.E. 1044.) Where the very existence of the corporation is attacked, it is the corporation's right (*Masterton v. Lenox Realty Co.* (1940), 127 Conn. 35, 15 A.2d 15; and see *Assets Realization Co. v. Defrees, Brace & Ritter* (1907), 225 Ill. 508, 80 N.E. 263), and indeed the duty of all of its officers (*Esarey v. Pierson* (1923), 84 Ind. App. 109, 141 N.E. 87, and see *Wolbrette v. New Orleans Drug Co.* (1921), 149 La. 434, 89 So. 406), to take the necessary steps to protect its corporate existence and to repel an attack which it regards as unfounded.

The Director cites no case in opposition to this rule. Nor does he cite any case holding that the court lacks the power to award attorney fees out of the company's assets. Despite this lack of authority, he contends that the court had no power to award fees for the following reasons.

(1) The Illinois Insurance Code narrowed the discretion of the chancery court and only permits fees to be awarded to firms appointed by the Director.

(2) The cases cited before are irrelevant because, so the Director inaccurately alleges, they involved the resistance to the appointment of a receiver while the company was still under the direction and control of the company's officers and directors; whereas, here the assets had already been taken over by the Director in 1977. The Director contends that if the directors wished to contest the takeover, they should have done so in 1977 and having failed to do so cannot now claim attorney fees in order to contest the petition for liquidation.

(3) Absent statutory or contractual authority a party must pay for his own attorneys.

(4) Payments of attorney fees would be an illegal preference of the claims of guarantee fund certificate holders, guarantee capital shareholders, surplus note holders, shareholders, members or other owners over claims of the other creditors.

It is true that the Insurance Code has limited the power of chancery in areas where the code is expressly in contradiction with common law (see, for example, *People ex rel. Palmer v. Niehaus* (1934), 356 Ill. 104, 109 N.E. 349, holding that the court cannot appoint the receiver since that power is vested by statute in the Director of Insurance). The Director has, however, cited no statute prohibiting the appointment of counsel for the insurance company or the awarding of fees to such counsel. Section 202 of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 814) relied upon by the Director, merely permits the Director to appoint assistants and provides for their compensation. Contrary to the Director's argument, it does not expressly limit the award of compensation to those appointed by the Director to act as his assistants. Absent such limitation it must be assumed that the legislature did not intend to overturn the well-established doctrine that attorney fees may be awarded out of the insurer's assets for the defense of the insurer. See *McConnell v. All-Coverage Insurance Exchange Automobile & Fire* (1964), 229 Cal. App. 2d 735, 40 Cal. Rptr. 587; *Anderson v. Great Republic Life Insurance Co.* (1940), 41 Cal. App. 2d 181, 106 P.2d 75.

Indeed we must assume that the legislature did not intend to

overturn the common law doctrine since we must assume it did not intend to pass an unconstitutional statute:

> "To hold that the court lacked jurisdiction to make orders such as are before us would be to countenance a de facto deprivation of property without due process of law. While the nature of the insurance business justifies the preliminary interposition of a conservator on an ex parte application, respondents cannot validly be deprived permanently of their property and of their control over it without a full-dress judicial hearing on the merits of the commissioner's allegations. But such a hearing necessarily implies the assistance of counsel and the expenditure of funds in preparation of a defense. The commissioner cannot, by seizure of respondents' funds before the hearing, create a practical impossibility of any effective contest of his administrative findings and allegations. Totally to deny respondents access to any corporate funds thus would render the entire scheme invalid. The Legislature cannot be presumed to have intended an unconstitutional procedure and the absence of any provision for orders for counsel fees and costs from the particular statute involved must be deemed to evidence an intent to resort to the provisions of general law applicable to all kinds and varieties of receivership, statutory or otherwise." *McConnell v. All-Coverage Insurance Exchange Automobile & Fire* (1964), 229 Cal. App. 2d 735, 743-44, 40 Cal. Rptr. 587, 593.

As already noted, a corporation has both the right and duty to defend itself when its very existence is attacked. Yet unless Main can employ counsel such defense is impossible since the insurance company, being a corporation, may appear only by attorney. *Greer v. Ludwick* (1968), 100 Ill. App. 2d 27, 241 N.E.2d 4; *Remole Soil Service, Inc. v. Benson* (1966), 68 Ill. App. 2d 234, 215 N.E.2d 678.

For this reason, it is well recognized that as a matter of due process, the seizure of the assets of the allegedly insolvent corporation cannot abolish:

> "the ordinary and fundamental legal right of such corporation to employ counsel to aid it to resist by legal means all attempts by state officers or others to have it taken charge of and liquidated as unsound or insolvent. Nor does the act of seizure of its assets by the comptroller deprive such corporation of its inherent right to defend its affairs against judicial sequestration and to that end reasonably obligate itself by incurring legal expenses that are lawfully payable by the liquidator as a corporate debt chargeable against the assets of the liquidated institu-

tion." (*Twyman v. Smith* (1935), 119 Fla. 365, 373, 161 So. 427, 430; In accord, *Assets Realization Co. v. Defrees, Brace & Ritter* (1907), 225 Ill. 508, 80 N.E. 263; *McConnell v. All-Coverage Insurance Exchange Automobile & Fire* (1964), 229 Cal. App. 2d 735, 40 Cal. Rptr. 587; *Anderson v. Great Republic Life Insurance Co.* (1940), 41 Cal. App. 2d 181, 106 P.2d 75.)

As the court in *Anderson* remarked:

> "If such an argument were valid, the result would be obvious. An insurance company proceeded against by the commissioner would be hamstrung in any effort to defend itself, the hands of its directors would be tied and there would be no effective recourse from unwarranted official action. If this were the case the effect would be to deny the company the right to counsel and hence to due process of law. Since in such a proceeding as this all the funds of the corporation are placed in the hands of the conservator, an arbitrary denial to the corporation of the use of any portion of such funds to pay attorneys' fees amounts to the same thing as a denial of the right to contract for the services of an attorney, the effect of which would be a denial of the right to defend at all." 41 Cal. App. 2d 181, 193, 106 P.2d 75, 82.

In light of this, it is apparent that this rule is not limited to situations where the appointment of a receiver is resisted in the first instance but it applies also to good faith efforts, on reasonable grounds, to discharge a receiver already appointed. (*Sims v. Homeseekers Fire Insurance Co.* (1938), 120 W. Va. 459, 199 S.E. 69.) The director's argument that Main should have contested the 1977 proceeding at best goes to the issue of good faith. Furthermore, it seems to carry little merit. Settlements are always favored in the law, and should not be discouraged in the rehabilitation of an insurance company. It is obviously to the benefit of both the company itself and the creditors not to drain its assets in litigation. For this reason, an insurer should be encouraged to agree on rehabilitation rather than being presented with a threat that if it does not litigate an attempt to rehabilitate it will, *de facto*, be permitted to litigate any possible future attempt to liquidate by being deprived of the assets necessary to employ counsel.

There is no need for an express statutory provision permitting such attorney fees (*Anderson v. Great Republic Life Insurance Co.* (1940), 41 Cal. App. 2d 181, 106 P.2d 75), and the cases previously cited do not depend on any statutory provisions. Furthermore, the axiom cited by the Director that attorney fees cannot be awarded in the absence of contract or statute is inapplicable since it applies to at-

tempts to recover attorney fees from the other party. The general rule, as the Director agrees, is that each party pays his own attorney fees. That is all Main is attempting to do—recover enough of its own assets so that it can pay its own attorneys.

Since the Herman firm is not a shareholder of Main, payment to the firm is not an improper preference to a stockholder. The Director contends that the stockholders were obligated to pay the attorney fees and thus payment of the fees is payment of a debt of the stockholders. This contention overlooks the fact that the right and obligation to defend was on the corporation itself. As pointed out in *McConnell v. All-Coverage Insurance Exchange Automobile & Fire* (1964), 229 Cal. App. 2d 735, 747, 40 Cal. Rptr. 587, 595:

> "In the second place, the officers, directors and stockholders of an insurance company cannot arbitrarily be required to devote additional assets in order to protect those already devoted to that business. As we have pointed out above, the state cannot constitutionally take possession of assets and thus deprive the owner of power to secure a judicial order for their return. Nor do we think that the state can insist, as a matter of right, that the security of a legitimate investment in a legitimate business must be subject to the unlitigated ipse dixit of a state officer unless the investor is prepared to invest new funds in defense of the first investment."

■ Payment of the attorney fees is not payment to the stockholders or directors but payment in effect to the corporation itself (*Wolbrette v. New Orleans Drug Co.* (1921), 149 La. 434, 89 So. 406), and such payment is proper even where, as here, the attorneys represent both the corporation and the stockholder since their interests are identical. (*Masterton v. Lenox Realty Co.* (1940), 127 Conn. 35, 15 A.2d 15.) The claim for attorney fees is a preferred claim (*People v. Commercial Alliance Life Insurance Co.* (1896), 148 N.Y. 563, 42 N.E. 1044), since clearly it is part of the expenses of administration. (See *Magnusson v. American Allied Insurance Co.* (1969), 282 Minn. 287, 164 N.W.2d 867.) In any event, as pointed out in *Wolbrette*, to afford Main sufficient assets to provide for its defense is not a partial distribution of assets.

We have not, in this opinion, ruled that the Herman firm is entitled as a matter of right and a matter of law to the fees sought in its petition. As previously stated, both the actual award of attorney fees and their amount rest in the sound discretion of the trial court in view of all the circumstances. (*Watson v. Johnson* (1933), 174 Wash. 12, 24 P.2d 592.) We would note, however, that the unappealed award

of attorney fees to the Arvey firm,[1] which is now final, would tend to indicate that the defense, at least at the time the Herman firm was appointed, was being conducted in good faith.

We also note that one of the circumstances the trial court must take into consideration in awarding fees is that it ordered the Herman firm to assume Main's defense. Thus the usual rule making the rights of the attorneys dependent on the good faith of the directors employing them would seem not to be in point.

## II

Main also attacks the decree of liquidation contending that the trial court erred in admitting certain exhibits and in admitting opinion evidence as to the claims reserves of Main without sufficient foundation of fact. The exhibits were:

(1) an unaudited 1980 financial statement of Main which was attached to the complaint;

(2) spread sheets of claims reserves;

(3) clerical reconciliation of claims reserves;

(4) analysis of changes in Main's surplus between September 30, 1979, and June 30, 1980;

(5) spread sheets summarizing all Main's claims reserves used in the financial statement.

The Director contends that the first exhibit was properly admitted under section 190(5) of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 802(5)), which provides that the complaint and any exhibits filed therewith shall be received as *prima facie* evidence of the facts therein recited. Main contends that the statute, if construed to preclude the judiciary from determining in the first instance the admissibility of the evidence, is unconstitutional, citing *Johnson v. Theodoron* (1927), 324 Ill. 543, 155 N.E. 481. Since the court will not rule on the constitutionality of a statute unless necessary, it is important to determine if the exhibit would otherwise not have been admissible. But that this court cannot do without a more complete record.

---

[1]The Director contends in his brief that he did not appeal from the Arvey award because he did not wish to delay the trial on the issue of Main's insolvency. The Director fails to explain how since the final order directing the Director to pay Arvey was not entered until October 20, 1981, after the trial had been concluded, an appeal could have delayed the trial. In any event, absent a Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)), finding the Director could not appeal until all the issues were determined. In addition, even where an appeal of a single issue is permitted under Supreme Court Rule 304(a) that appeal does not necessarily stay the rest of the proceedings.

The Director contends that all five exhibits were properly admitted as business records. (87 Ill. 2d R. 236(a).) The business records rule simply recognizes that records of an act, occurrence or event routinely made at the time of the transaction, or within a reasonable time thereafter are normally sufficiently reliable in nature to be admissible in evidence despite their hearsay character. The credibility of any business record depends upon the regular, prompt and systematic nature of the entry and the fact that it is relied on in the operation of a business. (*People v. Mormon* (1981), 97 Ill. App. 3d 556, 422 N.E.2d 1065; *Ocasio-Morales v. Fulton Machine Co.* (1973), 10 Ill. App. 3d 719, 295 N.E.2d 329.) A crucial aspect is that the entries be prepared as a regular part of the business. (*Hiram Ricker & Sons v. Students International Meditation Society* (1st Cir. 1974), 501 F.2d 550.) "The entry offered must of course be a part of *a series of entries* or *reports*, not a causal or isolated one." (5 Wigmore, Evidence sec. 1525 (3d ed. 1940).) But even if we accept the Director's contention that these records were prepared in the regular course of business, that alone is not sufficient to warrant their admissibility. To be admissible, the records must also be records of an act, transaction, occurrence or event made at the time of the event or within a reasonable time thereafter (*A. J. Davinroy Plumbing & Heating v. Finis P. Ernest, Inc.* (1980), 87 Ill. App. 3d 1047, 409 N.E.2d 372), and it must be the regular course of business to make such records at the time of the events to which they relate or within a reasonable time thereafter. (*Davinroy; People v. Collins* (1979), 70 Ill. App. 3d 413, 387 N.E.2d 995.) For this reason summaries often are not admissible as business records. (*Davinroy; Huddleston v. Herman & MacLean* (5th Cir. 1981), 640 F.2d 534.) The Director in his brief has not contended that these records were made at or near the time of the transaction, and absent a record this court cannot search the record to determine if they were. Furthermore, since the probability of trustworthiness is the rationale for the business records rule, records prepared for litigation are not normally admissible even if it is a part of the regular course of business to make such records. (*People v. Mormon* (1981), 97 Ill. App. 3d 556, 422 N.E.2d 1065; *Ocasio-Morales v. Fulton Machine Co.* (1973), 10 Ill. App. 3d 719, 295 N.E.2d 329; *Palmer v. Hoffman* (1943), 318 U.S. 109, 18 L. Ed. 645, 63 S. Ct. 477.) Finally, Main contends, citing evidence not before this court, that the exhibits were based upon information supplied by unidentified sources whose trustworthiness cannot be ascertained. *Meder v. Everest & Jennings, Inc.* (8th Cir. 1981), 637 F.2d 1182, and compare *Standard Oil Co. v. Moore* (9th Cir. 1957), 251 F.2d 188.

Perhaps even more serious is Main's contention that the trial court erred in admitting opinion evidence on the claims reserves of Main

without sufficient factual foundation. The trial court in its decision of October 20, 1981, denying the Director's motion, rejected this opinion evidence. It later reversed itself and found Main insolvent allegedly relying on this opinion evidence. Thus the importance of this evidence, which is not before this court, is obvious. But since it is not before this court it is impossible for us to determine whether the evidence was indeed without sufficient factual foundation in the record.

■ The Director contends that this argument is foreclosed by the Illinois Supreme Court decision in *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, in which the court adopted the Federal rules permitting opinion evidence based on facts not in evidence. But according to *Wilson* itself, that ruling is only applicable to cases in which the trial commenced on or after September 1, 1981. (*Jones v. Karraker* (1982), 109 Ill. App. 3d 363, 440 N.E.2d 420; *Mohler v. Blanchette* (1982), 106 Ill. App. 3d 545, 435 N.E.2d 1161.) Since the trial in this case was concluded in July 1981, *Wilson* is inapplicable.

■ The Director contends that this court must affirm the decision of the trial court because the record before this court is incomplete. While this is the normal rule (*LaPlaca v. Gilbert & Wolf, Inc.* (1976), 37 Ill. App. 3d 259, 345 N.E.2d 774), it is inapplicable here where the incompleteness of the record is due to the trial court's error in refusing to allow Main to have a sufficient amount of its assets to provide a record so that this court could review the issues. (*People ex rel. Fahner v. Community Hospital* (1982), 108 Ill. App. 3d 1051, 440 N.E.2d 200; *Wolbrette v. New Orleans Drug Co.* (1921), 149 La. 434, 89 So. 406.) Since concededly Main was without funds it was entitled to a reasonable amount of money to present a defense (*People ex rel. Fahner*), and in light of the seriousness of the issues raised on appeal, that includes the costs of providing the record needed for review. This does not necessarily mean that Main is entitled to funds to produce all of the record and all of the report of proceedings, if in fact not all is needed.

Since the issues before the court are serious, and it is impossible to review them without a record, it is necessary for this court to remand this case to the trial court with instructions to provide the necessary record for review. At that time, in the interests of expediting the final decision, the trial court may, if it so desires, reconsider its decision of June 23, 1982, in light of this court's ruling as to the inapplicability of *Wilson v. Clark*.

Reversed and remanded to the trial court with instructions.

JOHNSON and LINN, JJ., concur.